**Mildred K. Smith, Appellant, v. Northern Trust Company et al., Appellees.**

**Gen. No. 42,989.**

Heard in the first division of this court for the first district at the February term, 1944. ▮▮▮▮ Opinion filed April 3, 1944.

HENRY W. KENOE and JACK DU BOW, both of Chicago, for appellant.

EDWARD A. RIBAL, of Chicago, for appellees.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Plaintiff appeals from a decree refusing to set aside and hold as void a certain trust agreement as amended, executed by her deceased husband, Elmo V. Smith, conveying to The Northern Trust Company, as trustee, approximately $50,000 in personal property, being substantially all his estate, and holding that plaintiff was not entitled to any portion of the trust fund.

Smith was divorced July 21, 1939, and on July 29, 1939, married plaintiff; he was then receiving a pension from the American Bridge Company, of which he had been general manager, and owned about $50,000 in stocks, bonds and cash; on March 14 following, he executed the trust agreement by which he conveyed to The Northern Trust Company, as trustee, all this personalty, to hold and administer during his lifetime, paying the net income, after deducting necessary costs and expenses of the trust, to himself in reasonable instalments during his natural life, and upon his death to pay over and deliver the trust estate as follows: To defendants William Harlis Smith and Mrs. Catherine Johnsen, his son and daughter, 40 per cent each, and to plaintiff 20 per cent. By this agreement it was further provided that if by reason of Smith's illness or changed business conditions the income from the trust should be insufficient to maintain him in the standard of living to which he was accustomed, then upon his request the trustee should pay over to him, out of the principal of the trust estate, such funds as the trustee might deem necessary for Smith to maintain such standard of living; that before selling or disposing of any of the securities or investing the cash in the trust estate, or the proceeds of the sale of any of the securities, the trustee should submit to Smith its recommendations with reference to such sale, disposition or investment, and unless Smith notified the trustee within 10 days thereafter of his objection to such sale, disposition or investment, the trustee should be free to carry out its recommendations; that Smith reserved the right to revoke, alter or amend the agreement, in whole or in part. On November 30, 1940, while plaintiff and Smith were temporarily estranged, Smith altered the trust agreement by eliminating plaintiff from any share in the trust estate and dividing same in equal parts between his son and daughter upon his death. The separation of

Smith and plaintiff lasted only two weeks; on their reconciliation they lived together as formerly, but plaintiff was not informed of the change in the trust agreement; in March of 1941 Smith, who had a physical deformity and had suffered a stroke in 1938, was under the care of a physician, who diagnosed the case as senile arteriosclerotic dementia and recommended that he be institutionalized; from that time until November 21, 1941 he remained in sanitariums; on September 3, 1941 he was adjudicated an incompetent and the First National Bank and Trust Company of Evanston was appointed as conservator; he died intestate on December 29, 1941, and the conservator was thereafter appointed administrator of his estate; the only assets coming into the hands of the administrator were about $1,400 in cash; the funeral bill was $800; after payment of costs and attorneys' fees there will be nothing with which to pay a widow's award or make other distribution to plaintiff.

April 2, 1942 plaintiff filed her complaint, making The Northern Trust Company, as trustee, and the son and daughter of Smith defendants; the administrator was subsequently made an additional party defendant. Plaintiff charges that at the time of the execution of the trust agreement and the subsequent amendment, Smith was not of sound mind and memory and was wholly incapable of making any just and proper distribution of his estate; that the son and daughter, through undue influence, falsehood and misrepresentation, induced Smith to execute the trust agreement and the amendment; that the execution and creation of the trust agreement and amendment was a scheme and device employed by Smith to defraud plaintiff of any interest and share in his personal estate and of the benefits of the statutes of the State conferring upon plaintiff her rights as Smith's surviving widow. The master and the trial court held that the allegations as to mental incompetency and undue influence were not

sustained by the evidence. The master held that the amendment to the trust agreement was an attempt to deprive plaintiff of her interest in Smith's estate while he retained control over same, and was in fraud of plaintiff's rights. The trial court sustained exceptions to the master's report on this finding and held the trust agreement and amendment valid and that plaintiff had no interest in the trust estate.

In her reply brief plaintiff states that her position "is based entirely upon the premise that under our statutes a wife's right to dower and award, while perhaps not protected from an absolute transfer, are protected from the employment of a contrivance by which the husband, retaining control of his personalty during his lifetime, seeks to place it beyond the operations of the statute at his death." Defendants' position is that the husband may freely dispose of his personalty by gift, sale or outright destruction, during his lifetime, though he pauperize his wife thereby, but that if he merely confers the *indicia* of ownership upon another to deceive his wife, "the property meanwhile remaining actually in him, then the transaction is a sham and equity properly stamps it as 'colorable' or 'illusory' and the widow may have it set aside." These statements put the parties in substantial agreement as to the law, and the authorities support the position taken.

By our statutes, where a husband leaving descendants dies intestate, the surviving wife is entitled to one third of the personal estate of which the decedent died seized, after all just claims against his estate are fully paid. The surviving wife is endowed of a third part of all real estate of which her deceased husband was seized of an estate of inheritance at any time during the marriage, and upon renunciation of a will, if the deceased leaves a descendant, she is entitled to one third of the personal estate and one third of each parcel of real estate of which the deceased died seized and in which she does not perfect her right to dower

in the manner provided by the statute. Probate Act, secs. 11, 16 and 18 (Ill. Rev. Stat. 1943, ch. 3, pars. 162, 168 and 170 [Jones Ill. Stats. Ann. 110.258, 110.264, 110.266]). In *In re Estate of Judd,* 292 Ill. App. 563, the right of the widow in Illinois to one third of the personal estate of the deceased husband is traced from the ordinance of 1787. As said in *Blankenship v. Hall,* 233 Ill. 116, 129: "There has been a manifest desire on the part of the lawmakers of this State to provide for the support of the wife, not only during the lifetime of the husband but also after his death, until, as this court said in *In re Taylor's will,* 55 Ill. 252, on page 259: 'We do not go too far when we say that it has become a sort of common law in this State that this support shall be in all cases one-third of the husband's real estate for life, and one-third of the personal estate forever, which shall remain after the payment of debts.'" In *Padfield v. Padfield,* 78 Ill. 16, the court said (18, 19): "It is true that, where a husband still retained the right to control the property, and resume the same at pleasure, such a gift was held to be in fraud of the rights of his wife. But there, the transfer was only colorable, the title still being in the husband, and, being thus entitled, the wife could claim and recover her share, on the death of the husband. In such a case, the husband still remained the owner, notwithstanding the apparent sale, and hence the wife was entitled to share in such property as in any other. The statute gives her a right to one-third of the personal estate owned by her husband at the time of his death, after the payment of his debts, in case he dies intestate. Hence, when the sale is only colorable, and the property may be resumed by the husband, and he thus dies the owner, the wife may participate in its distribution." In *Newman v. Dore,* 275 N. Y. 371, the deceased husband three days before his death executed trust agreements, of which the court said (377, 378): "Under the trust agreements executed a few days be-

fore the death of the settlor, he reserved the enjoyment of the entire income as long as he should live, and a right to revoke the trust at his will, and in general the powers granted to the trustees were in terms made 'subject to the settlor's control during his life,' and could be exercised 'in such manner only as the settlor shall from time to time direct in writing.' Thus by the trust agreement which transferred to the trustees the settlor's entire property, the settlor reserved substantially the same rights to enjoy and control the disposition of the property as he previously had possessed, and the inference is inescapable that the trust agreements were executed by the settlor, as the court has found, 'with the intention and for the purpose of diminishing his estate and thereby to reduce in amount the share' of his wife in his estate upon his death and as a 'contrivance to deprive . . . his widow of any rights in and to his property upon his death.' They had no other purpose and substantially they had no other effect.'' The trust agreements were held void as to the widow and ineffective to prevent her from sharing in the property conveyed under the Decedent Estate Law of New York. The court said further (379, 380): ''Since the law gives the wife only an expectant interest in the property of her husband which becomes part of his estate, and since the law does not restrict transfers of property by the husband during his life, it would seem that the only sound test of the validity of a challenged transfer is whether it is real or illusory. That is the test applied in *Leonard v. Leonard* (supra). The test has been formulated in different ways, but in most jurisdictions the test applied is essentially the test of whether the husband has in good faith divested himself of ownership of his property or has made an illusory transfer. . . . In no jurisdiction has a transfer in trust been upheld where the conveyance is intended only to cover up the fact that the husband is retaining full control of the property though

in form he has parted with it.'' In *Martin v. Martin,* 282 Ky. 411, the surviving wife sought to reach the unexpended part of approximately $30,000 deposited in several banks to the credit of her deceased husband and by him transferred to his sister several weeks before his marriage with plaintiff; it appeared that the sister expended no part of the money for her own uses, but gave to her brother in his lifetime such sums as he requested. The transfer was held invalid as to the wife, and the court said (419, 420): ''It must be conceded that the decided weight of authority is that an absolute bona fide gift of personalty by a man contemplating marriage with a woman, or even by a husband during his life, is not a fraud on the marital right of the wife, or intended wife, even though made with the intention and purpose of depriving her of the right of sharing in such property. 13 R. C. L. 1081–1085; 30 C. J. 523; *Potter Title & Trust Co., Guardian, etc., v. William H. Braum, Ex'r, etc.,* 294 Pa. 482, 144 A. 401, 64 A. L. R. 463, and cases cited in annotation thereto. This rule is generally stated with the qualification that if a transfer by a husband be colorable merely, that is, a mere device by which the husband does not part with absolute dominion over the property, it will be considered a fraud on the wife's marital rights, and it is also generally held that a gift causa mortis by a husband to a third person is a fraud on the wife's marital rights, where the gift is made to prevent her sharing in the property, since the gift does not take effect until the death of the donor.'' In analyzing this case defendants say: ''The court held the sister was merely acting as a depositary for her brother's funds to prevent his wife from ever securing for herself any of his money. The transaction was colorable and a violation of the husband's moral duty to provide for his wife both before and after his death.'' The present case is not unlike the *Newman* case or the *Martin* case. Here the trust estate constituted all of the husband's estate,

except his pension; he reserved for himself all of the income from the trust and the right, in event of illness or changed business conditions, to request of the trustee enough of the principal of the trust estate to maintain him in the manner in which he was accustomed to live; under the terms of the agreement by which the settlor reserved the right to revoke, alter or amend the trust agreement, any request by the settlor for any part of the principal would be equivalent to a command, which the trustee could not disobey except at the risk of having the trust terminated; the trust agreement expressly reserved to the settlor a veto over the sale, disposition or investment of trust assets by the trustee, and the right to revoke, alter or amend the trust agreement gave the settlor power to direct and control any change in the securities or any investment of trust funds; hence, as in the cases heretofore discussed, the transfer of title to the trustee, although absolute in form, was merely colorable and illusory. It was therefore invalid as to plaintiff, who is entitled to a widow's award and to one third of the estate of her deceased husband, including the trust estate, after payment of all proper expenses of the trust and all just claims.

The decree is reversed and the cause is remanded.

*Reversed and remanded.*

O'CONNOR, P. J., and MATCHETT, J., concur.