Merchants National Bank of Aurora, Trustee Under Trust No. 401, Plaintiff, v. Margaret Bird Weinold, and Martha Ellis Wagner, Defendants.
Margaret Bird Weinold, Certain Defendant-Appellant, v. Martha Ellis Wagner, Certain Defendant-Appellee.

### Gen. No. 10,952.

Second District.

December 20, 1956.

Released for publication January 5, 1957.

John G. Plain, of Aurora, for appellant.

Hempstead, Redman & Shearer, of St. Charles, for appellee.

JUSTICE CROW delivered the opinion of the court. This is a complaint by The Merchants National Bank of Aurora, as trustee under a trust agreement

executed by Winifred B. Colby, as settlor, and the bank, as trustee, against Margaret Bird Weinold and Martha Ellis Wagner, defendants. In its complaint, the bank asked that a determination be made as to the rights and interests in the trust assets of the defendants, the present ostensible beneficiaries under the trust agreement, by reason of the death of Winifred B. Colby, the settlor, and as to what effect, if any, the Last Will and Testament of Winifred B. Colby had upon the trust assets at the time of her death, and as to whether the will of the settlor revoked the trust agreement. The complaint also asked that the bank's appointment as trustee be confirmed, and its acts ratified, and there were attached copies of the trust agreement, the settlor's will, and the trustee's final account for the period December 19, 1952–March 30, 1954.

The answer of the defendant Margaret Bird Weinold, appellant, in substance, admitted the factual allegations of the complaint, and alleged the trust agreement created a valid inter vivos trust, not testamentary in character, and that the trust estate should be distributed pursuant to the terms of the trust agreement, upon the decease of the settlor, that the settlor created a completely executed trust, which was never revoked, cancelled, or amended, that the trustee at all times after creation of the trust held the trust assets as trustee, that the trust was in full force and effect upon the decease of the settlor, and that the distribution by the bank, as trustee, to itself as executor was wrongful and contrary to the terms of the trust agreement, and that she is entitled to one-half of the trust assets.

The answer of the defendant, Martha Ellis Wagner, appellee, in substance, admitted the factual allegations of the complaint and alleged that the trust agreement attempted to effect a testamentary disposition of the trust estate without complying with the statute on wills, and therefore the trust was invalid and termi-

nated at the death of Winifred B. Colby, and the trust assets were a part of her estate to pass in accordance with her will, primarily because of the settlor's reserved right to revoke or modify the trust agreement, and because the trust was to terminate on the death of Maude B. Ellis, or the settlor if Maude B. Ellis was not then living, at which time distribution was to be made to the defendants' beneficiaries.

The question raised by the complaint of the bank, as trustee, so far as decided by the trial court and now before us, is whether the trust agreement, admittedly not having been executed with the formalities of a will, was valid as an inter vivos trust to effect a valid distribution of the trust assets in accordance with the terms of the trust agreement after the death of the settlor, or was testamentary in character and hence invalid and did not control the distribution of the trust assets upon the settlor's decease. The further matter referred to in the complaint as to whether the will revoked the trust agreement was not decided below and is not before us.

On motion of the defendant Martha Ellis Wagner for a summary judgment, on the pleadings, the trial court entered a decree finding that the trust agreement, not having been executed pursuant to the statute on wills, and being testamentary in character as to the disposition at the settlor's decease, was invalid as a testamentary disposition, and ordered that the bank, as trustee, deliver all of the assets of the trust in its possession to itself as executor of the estate of Winifred B. Colby, deceased, the decree reciting that the settlor reserved absolute control of the trustee, the right to revoke, cancel, amend, increase or decrease the trust estate, thereby preventing the defendants' beneficiaries from any control or exerting any interest in the trust estate during the settlor's lifetime, that it was the settlor's intention the beneficiaries should

212

receive an interest only upon her decease, and that the interests of the defendants' beneficiaries were to take effect only upon the decease of the settlor.

From that part of the decree finding that the trust agreement was testamentary in character, and, not having been executed as a will, therefore void, and ordering the bank, as trustee, to turn over to itself, as executor, all the assets of the trust at the date of death of Winifred B. Colby, the defendant Margaret Bird Weinold has appealed.

No dispute exists as to the facts in the present proceeding,—they being sufficiently set forth in the complaint and other pleadings, and there being no evidence. The facts, as so disclosed by the pleadings, are that on December 19, 1935, Winifred B. Colby executed and delivered this trust agreement with and to The Merchants National Bank of Aurora, as trustee, and at the same time deposited certain securities, constituting the initial corpus, with the trustee, creating a trust known as "Trust No. 401." The trust agreement gave the trustee the usual powers and duties to receive, hold, protect, manage and control the trust assets, and to invest and reinvest the principal and proceeds, collect the same and the income, to sell, assign, lease, exchange, encumber, etc. the trust estate, to sell, alter, etc. the investments, collect dividends, etc. until the final and complete distribution and payment, pay all expenses of the trust, and retain a reasonable trustee's compensation. The trustee was also to receive any other property which might be devised, bequeathed, granted, conveyed, or assigned to it by the settlor or any other person, to be held pursuant to the terms of the agreement. The trustee was to pay all of the net income to the settlor, Winifred B. Colby, during her life, and to augment the payments of net income by the payment of principal to her from the trust estate to such extent as the settlor might at any time, or from

213

time to time, in writing, direct, and if she were unable to so direct then to such extent as necessary and proper for her adequate care. Upon the death of the settlor the trustee was to retain the trust estate, as then constituted, with all the trustee's rights and duties thereinbefore given, and, commencing with the death of the settlor, to pay the net income to Maude B. Ellis, a sister of the settlor, for her life, and if the income should not be adequate for her comfortable support, then to augment such by payment from the principal to such extent as should, in its discretion, be adequate. Upon the death of Maude B. Ellis, or upon the death of the settlor, if Maude B. Ellis should not then be living, the trust should terminate and the trustee should thereupon pay, transfer, and deliver the trust estate, as then constituted, one-half to Margaret Bird and one-half to Martha Ellis.

The settlor reserved the right of modifying or changing the trust agreement at any time or in any manner, to revoke the same, to withdraw from the trustee any or all of the trust estate at any time or from time to time, to increase or decrease the amount of the trust estate, and to change, alter, amend, or cancel the trust agreement, without the consent of the beneficiaries or the trustee, provided, however, that the settlor should exercise such right in writing.

The agreement recites that the settlor does hereby sell, assign, set over, transfer, and deliver all of her right, title, and interest to the trustee in and to the property and securities described in Exhibit A annexed, which property and any other as may be received is the trust estate.

It further provided that no assignment or order by any party having any beneficial interest, either actual or by way of anticipation of any part of the principal or income shall be valid, and that the trustee might

214

resign by giving 30 days' written notice to the settlor or, if she be deceased, to the surviving beneficiaries.

The trust agreement is a formal instrument of some 8 typewritten pages, in which Winifred B. Colby is called the settlor and the bank is called the trustee, the legend "#401" is in the margin opposite the first paragraph, it is executed under seal, states that it is binding upon the parties, their heirs, executors, administrators, and assigns, is executed on behalf of the bank-trustee by its president and trust officer, and Exhibit A attached is a listing of various securities, the settlor's and the trust officer's initials appearing at several different places in the margin of that Exhibit A.

From and after the execution of the trust agreement on December 19, 1935, the bank, as trustee, continued to act in fact under and pursuant to the terms thereof until the death of Winifred B. Colby, the settlor, on January 11, 1954, and it made annual accountings from December 19, 1935 to March 30, 1954. Maude B. Ellis, the sister of the settlor, predeceased the settlor. Margaret Bird, one of the named beneficiaries in the trust agreement, is now by marriage Margaret Bird Weinold and Martha Ellis, the other named beneficiary, is now by marriage Martha Ellis Wagner. The settlor died testate, and her will was admitted to probate. After several preliminary bequests, the residue of the estate was devised and bequeathed to Martha Ellis Wagner. The Merchants National Bank of Aurora, the trustee under the trust agreement, was also nominated, and duly qualified, as executor of the will. Thereafter the bank, as trustee, turned over to itself, as executor, all of the trust assets in its possession at the death of Winifred B. Colby.

It is conceded that the trust agreement was not executed as a will should be or in such a way as to satisfy the requirements of the statute on wills, and hence if it be testamentary in character it is necessarily

215

invalid. But if it be not testamentary in character and be instead a valid inter vivos trust it is valid and need not, of course, comply with the statute as to the execution of a will.

The recent case of Farkas v. Williams (1955) 5 Ill. 2d 417, is similar in many respects to the instant case. It is cited by the appellant as authority for holding that the terms of this trust agreement do not invalidate the trust or make it testamentary in character but instead create a valid inter vivos trust. That case is also cited by the appellee. The decedent settlor had there purchased certain shares of stock in his name "as trustee for Richard J. Williams," pursuant to written applications to that effect, and pursuant to contemporaneously executed declarations of trust. The declarations of trust provided, inter alia, that the settlor, as trustee, held the stock in trust for Richard J. Williams, as beneficiary; cash dividends during the settlor's lifetime were to be paid the settlor individually; additional stock purchased by reinvestment of dividends was to become a part of the trust; "upon my death the title to any stock subject hereto and the right to any subsequent payments or distributions shall be vested absolutely in the beneficiary"; during his lifetime the settlor reserved the right as trustee to vote, sell, redeem, exchange or otherwise deal with the stock and upon any sale or redemption the trust was to terminate as to that particular stock and the settlor was to be entitled to retain the proceeds individually; the settlor reserved the right to change the beneficiary, or revoke the trust upon written notice to the company whose shares were involved, and the decease of the beneficiary before the settlor was to revoke the trust; and upon revocation or termination the stock was to belong to the settlor individually. The court there made a determination of two allied issues: (1) whether upon execution of the trust declarations the beneficiary

216

presently acquired an interest in the subject matter of the trusts, the court pointing out that if no interest passed to the beneficiary before the death of the settlor the intended trusts were testamentary and hence invalid for failure to comply with the statute on wills, and it was held the beneficiary did presently acquire an interest upon their execution and before the settlor's death; and (2) whether the settlor had retained such control over the subject matter of the trusts as to render the trust instruments attempted testamentary dispositions, and it was held he had not and that they were valid inter vivos trusts. A reference was there made to Stouse v. First Nat. Bank of Chicago (Ky.), 245 S.W.2d 914, 32 A.L.R.2d 1261, which we shall later refer to, and Farkas v. Williams, also, p. 431, refers to Bogert, on Trust and Trustees, Vol. 1, Sec. 104, p. 484–5, as follows:

"Often the grantor-settlor holds back for himself the power to manage the property directly and indirectly. He provides that he himself shall have power to sell, lease, mortgage, pay taxes, make investments, and perform other acts of trust administration, or that he shall have authority to direct the trustees how they shall perform these duties. These reservations have not generally been deemed to show that the grantor remains during his life the master of the property to such an extent as to make his gift to the cestuis testamentary. So long as the trust continues, the cestuis have equitable interests, no matter who acts for them in protecting those interests, whether it be trustee or settlor. If the exercise of these powers by the settlor involves the total or partial destruction of the trust, as where the settlor has power to sell the rest and keep the proceeds, the power seems to be treated as practically that of revocation of the trust. It leaves an equitable interest in the cestui till revocation. It shows

217

a vested interest, subject to divestment, and not the lack of any interest at all."

We believe, under the circumstances, that the named beneficiaries under the trust agreement here had equitable interests in the corpus of the trust at and as of the time of its execution. The language of the agreement is absolute and in praesenti, the legal title passed to the trustee and the equitable titles to the various beneficiaries in their various capacities, upon delivery of the corpus, and orthodox powers and duties were imposed upon the trustee. There is nothing to indicate such was not done genuinely or was done illusorily: 32 A.L.R.2d 1274. The settlor intended to presently give the various beneficiaries interests in the corpus. Upon executing the trust agreement the settlor evidenced an intention to part with some of the incidents of ownership of the trust estate. Immediately after its execution she could not deal with the trust estate the same as if she owned the property absolutely, but only in accordance with its terms. She manifested an intention to bind herself to having this trust estate pass upon her death (if Maude B. Ellis, the second life tenant be not then living) to these defendants Margaret Bird Weinold and Martha Ellis Wagner, as the trust estate might then be constituted, unless she revoked, cancelled, modified, changed, altered, or amended the agreement, or withdrew any or all of the trust estate, or decreased the amount thereof, or had received payments of principal (any of which events might, of course, have occurred). The incidents of ownership which she intended to relinquish she intended herself, as the first lifetime beneficiary, (and Maude B. Ellis, the next lifetime beneficiary), and the defendants here, the ultimate beneficiaries, to acquire. We have some difficulty in viewing as a nullity an instrument which not only purports to

218

place legal title in a trustee but to do so for the benefit of several persons in addition to the settlor; the interests of those other persons would seem in reason to continue until destroyed by the settlor in the exercise of the reserved powers and control: 32 A.L.R.2d 1291–2.

■ That the trust is to terminate (under the circumstances here) upon the settlor's decease and the trustee is then to pay, transfer, and deliver the trust estate to the defendants' beneficiaries does not invalidate it or prevent them from presently acquiring interests upon the execution of the agreement: 32 A.L.R. 2d 1273. Such merely postpones their active enjoyment or possession thereof, not the acquisition thereof. The language of the present agreement is just as strong, for their present acquisition of interests upon its execution, as was the language in the declarations of trust in Farkas v. Williams: "Upon my death the title to any stock subject hereto and the right to any subsequent payments or distributions shall be vested absolutely in the beneficiary . . . ,"—if not stronger. That the trust corpus is, upon the settlor's decease, to be sold, any encumbrances paid, trust expenses paid, specific sums paid certain beneficiaries, (and the trust terminated pro tanto) one half the remainder retained absolutely by one beneficiary, (and the trust terminated pro tanto) and the other half continued in trust for other beneficiaries, does not mean the instrument is not a good inter vivos trust or prevent the acquisition of interests by the beneficiaries in praesenti upon its execution: Kelly v. Parker (1899) 181 Ill. 49. If an interest passes to the beneficiary during the life of the settlor, although the interest does not take effect in enjoyment or possession before the death of the settlor, the trust is not a testamentary trust, if otherwise valid as an inter vivos trust: Restatement, Trusts, Vol. 1, p. 172.

The settlor's provisions here that no assignment or order by any party having any beneficial interest shall be valid, and that the trustee might resign upon notice to the surviving beneficiaries, if the settlor be deceased, are somewhat helpful as indicating her belief that these defendants did presently have some beneficial interests and were beneficiaries, even though their interests were necessarily subject to some contingencies and possible eventualities.

Though it may be somewhat difficult to name those interests of these ultimate defendants' beneficiaries here, there is no particular reason for doing so as long as the interests passed to them immediately upon the creation of the trust: Farkas v. Williams, supra. We are inclined to believe their interests are vested equitable interests in remainder, subject to the foregoing certain conditions subsequent which might divest them,—but, whether technically vested subject to divestment upon conditions subsequent, or contingent upon conditions precedent, their interests were nevertheless created and passed upon creation of the trust. We cannot say they acquired no interest at all of any kind before the settlor's death.

Upon the second allied phase of the matter, we have to consider the question of whether there are reservations of power or authority by the settlor of such a substantial nature as to amount to a retention of virtual ownership in the settlor and the creation of the trustee as a mere agent of the settlor rather than a trustee and as to make the agreement testamentary: 32 A.L.R.2d 1277, 1291; Restatement, Trusts, Vol. 1, p. 175.

The settlor here reserved the right to the net income during her life, to payments of principal, to revoke, cancel, modify, change, alter, or amend the agreement, to withdraw any or all of the trust estate, to decrease the amount thereof, and under certain cir-

cumstances to appoint a successor trustee. None of those powers or rights seem particularly unusual in an inter vivos trust. It is well established that the retention by the settlor of a power to revoke, or amend the trust, even when coupled with a reservation of a lifetime interest therein, does not render the trust inoperative for want of execution as a will: Farkas v. Williams, supra; Cf. People v. Northern Trust Co. (1919) 289 Ill. 475; Cf. Bergmann v. Foreman State Trust & Savings Bank (1934) 273 Ill. App. 408; 32 A.L.R.2d 1272–1273, 1279, 1282; Restatement, Trusts, Vol. 1, pp. 174–175. Many and extensive other rights and powers may be reserved by a settlor without defeating a trust, and there is a tendency to permit the settlor to retain considerable power over the trust property: 32 A.L.R.2d 1276, 1283, 1286, 1287, 1289; Farkas v. Williams, supra,—including the power or right to use, manage, control, improve, and lease it during his life, to enjoy the rents and profits, and to devise, mortgage, sell, and convey it: Kelly v. Parker, supra; to consume the principal: Farkas v. Williams, supra; to vote shares of stock included in the trust, to approve mortgage investments of the trustee, to have his debts paid after his decease out of the trust, to make a division of portions of the trust estate among his children, and to appoint a successor trustee: Bear v. Millikin Trust Co. (1929) 336 Ill. 366; to exercise any rights, options, or privileges in life insurance policies constituting the corpus, to change the beneficiary therein, to borrow money thereon, to pledge the policies, to receive dividends thereon, and to surrender such for their cash surrender value: Gurnett v. Mutual Life Ins. Co. of New York (1934) 356 Ill. 612.

■ In addition to the other not unusual powers reserved by the settlor, set out above, it was provided in the trust agreement that during the lifetime and legal competency of the settlor the trustee should not

exercise any of the powers granted without first obtaining the written consent of the settlor. It may have been primarily by reason of this language that the trial court here held that the settlor had retained absolute control of the trustee and that the trust agreement did not create a valid inter vivos trust. That particular provision, as such, was not in the declarations of trust in Farkas v. Williams, supra, but in view of the fact the settlor himself was also the trustee in that case and necessarily the same individual would not, as trustee, be exercising any powers without first, as settlor, consenting thereto, and in view of the other provisions of the declarations of trust there involved, that case is practically decisive that such a provision will not serve to render the instrument testamentary in character. Furthermore, in the case of Stouse v. First National Bank of Chicago, supra, referred to in Farkas v. Williams, supra, the trust agreement provided, inter alia, "the trustees shall exercise the powers conferred upon them only upon the written instructions of the said Sallie A. Hert (Settlor)." It may be observed that in that case also the settlor was one of the trustees. The Court there held the trust instrument created a valid trust, and made the following comment concerning this specific restriction upon the trustees, 32 A.L.R.2d pp. 1266–1267:

". . . it is to be noted that this reserves to Mrs. Hert only the power to give instructions concerning the exercise of the specific powers conferred by the trust instrument. There was no reservation of authority in Mrs. Hert to instruct the trustees to do any act beyond the scope of the powers set forth in the instrument. She did not retain the power to deal with the property as she pleased, or to have possession of the property, or to prescribe details of administration not specified in the trust instrument. The other trustees were not

222

merely her agents, because she could direct them only according to the terms of the trust instrument, and not according to her unlimited whims or desires.

"The appellants argue that the trustees could not perform any act until Mrs. Hert first gave them directions to proceed, with the result that Mrs. Hert was able to exercise absolute and unlimited control over the property until she chose to give some directions. This argument loses sight of the fact that the trustees had both the legal title and the possession of the trust assets, and Mrs. Hert could exercise no control over the assets except by giving directions within the terms of the trust instrument, unless she chose to revoke the trust."

 Both Scott, on Trusts, and Bogert, on Trusts, etc., recognize that the degree of reserved control in the settlor is the determining factor on the question of whether an instrument creates a valid inter vivos trust or only a mere agency: Scott on Trusts, Vol. 1, Sec. 57.2; Bogert on Trusts and Trustees, Vol. 1, Secs. 103, 104.

We are of the opinion that, under the circumstances here, the power reserved by Winifred B. Colby, the settlor, to the effect the trustee should not exercise any of its powers granted in the agreement without the prior written consent of the settlor, during her lifetime and legal competency, could be exercised, not according to her unlimited whims or desires, but only within the limits and in accordance with the terms of the trust agreement, and was not of such a degree as to reduce the trustee to the status of a mere agent. She could not instruct the trustee to do any act beyond the scope of the powers set forth in the trust agreement, but could only give instructions as to the exercise of the specific powers conferred by the trust instrument. She did not retain the power to deal with the property in trust as she pleased, or to have possession thereof, or

to prescribe details of trust administration not specified in the agreement. The trustee had the legal title to the trust assets and their possession. Unless she chose to revoke the trust her written consent or instructions to the trustee to exercise its powers therein granted could only be done within the terms of the trust agreement.

Furthermore, the formality of the transaction here, by which the settlor's intentions were manifested by a written, rather lengthy, trust agreement, under seal, in a solemn and formal manner, she being specifically denominated the settlor, the bank the trustee, and others, the beneficiaries, the trust being assigned a number, the list of the original corpus being appropriately initialed at several places for identification by her and the trust officer, and the president and trust officer of the trustee having executed it as well as her, —thus accomplishing the substance of the historical purpose of the statute on wills,—to prevent fraud,—is persuasive as to its validity as an inter vivos trust: Farkas v. Williams, supra; 32 A.L.R.2d 1277; Restatement, Trusts, Vol. 1, pp. 179–180.

██ Storkan v. Ziska (1950) 406 Ill. 259, cited by the appellee for the propositions that the question of paramount importance is the settlor's intention, and that the same rules of construction as to wills and written instruments apply generally to the construction of trust agreements, was a complaint to construe a trust, involving matters not here involved, and though it recognizes those general propositions or principles it is not otherwise applicable. Smith v. Northern Trust Co. (1944) 322 Ill. App. 168, concerned an inter vivos trust agreement containing some of the rights reserved to the settlor in the agreement in the case at bar, but there was there involved the relationships between the settlor husband, deceased, and his surviving wife, who, by an amendment to the trust,

was not a beneficiary, and her statutory rights to a widow's award and one-third of the estate,—the settlor husband having there put practically all his estate in the trust,—and as to the plaintiff wife the trust was held merely colorable, illusory, and invalid. The case involved entirely different considerations, relationships, and questions than the case at bar. Oswald v. Caldwell (1907) 225 Ill. 224 held that a deed and two associated written instruments were testamentary, had no binding force, and the property was intestate upon the grantor's decease,—the title did not vest in the grantee during the life of the grantor,—it appearing the grantor received the net income therefrom after as well as before the deed, it continued to be insured in her name, the operating expenses were paid as before, there was no apparent change in ownership or possession, the grantor had not surrendered dominion over it, the grantee did not claim it, and she tried once to change the beneficiaries. The case is entirely dissimilar to the present case.

■ The trust agreement here created a valid inter vivos trust. The decree is, therefore, in error and is reversed, and the cause remanded, with directions to deny the motion of the defendant Martha Ellis Wagner for summary judgment, and for further proceedings not inconsistent herewith.

Reversed and remanded with directions.

DOVE, P. J. and EOVALDI, J., concur.