(No. 45031.—

EARL L. MONTGOMERY, Admr., Appellant, v. AND-RICE F. MICHAELS *et al.*, Appellees.

*Opinion filed January 26, 1973.—Modified on denial of rehearing September 27, 1973.*

ROSS S. WELCH, of Chicago, for appellant.

HALL, MEYER, FISHER, HOLMBERG, SHOOK & MAY, of Waukegan (JAY J. JOHNSTON and THEODORE CORNELL, JR., of counsel), for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court:

During her lifetime, Bernice D. Montgomery created in certain banks eight savings accounts, which differed somewhat in their terms, but all were essentially the same in that she was named as trustee therein and the accounts were for the benefit of her two children by a prior marriage. All but two of the accounts specifically provided that they were to be paid to the child or children named therein on her death. She retained control over all of these accounts during her lifetime and made deposits in and withdrawals from them.

She died intestate, and her husband, Dr. Earl Montgomery, was appointed administrator of her estate. As administrator and individually, he filed a citation petition in the circuit court of Lake County wherein he alleged that the trusts were a fraud on his marital rights and were illusory, and if sustained would defeat his statutory right to one third of the decedent's personal estate (Ill. Rev. Stat. 1969, ch. 3, par. 11), and his right to a widower's award (Ill. Rev. Stat. 1969, ch. 3, par. 178). He prayed, among other things, that the court enter an order finding that said trusts are illusory and invalid, that said bank accounts are the property of the decedent, and that the balance of said accounts be turned over to him as administrator of the estate.

The trial court granted a motion to dismiss the petition, except as to the amount of the funeral bill, which was assessed equally against the two beneficiaries of the eight savings-account trusts. It found that the savings-account trusts were not illusory, and that the balances therein should be paid to the named beneficiaries after payment of the funeral bill. The appellate court affirmed (2 Ill. App. 3d 821), and we granted leave to appeal.

In *In re Estate of Petralia (1965), 32 Ill.2d 134,* we upheld the validity of savings-account trusts or "Totten

Trusts," so called because of the case entitled *In re Totten (1904), 179 N.Y. 112, 71 N.E. 748.* In *Petralia* we held that if the settlor is also the trustee and retains complete control over the account during his or her lifetime, such a savings account is not different in substance from other revocable *inter vivos* trusts, which this court has found to be valid; that the declaration of the trust immediately creates an equitable interest in the beneficiaries even though the enjoyment of the interest is postponed until the death of the settlor and may be completely destroyed by withdrawal from the account of all of the deposits made by the settlor during his or her lifetime; and that the destructibility of the interest of the beneficiary does not negate the existence of a valid trust. *Farkas v. Williams (1955), 5 Ill.2d 417; Gurnett v. Mutual Life Ins. Co. (1934), 356 Ill. 612.*

In *Petralia,* at page 138, we quoted from Restatement (Second) of Trusts, sec. 58: "Where a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust."

The question remains, however, whether such a trust is valid for every purpose, and particularly whether it is effective to defeat a surviving spouse's statutory share in the estate of his deceased spouse, and his right to a widower's award. Ill. Rev. Stat. 1969, ch. 3, par. 178.

The Probate Act expressed the policy of protecting a surviving spouse in the expectancy which he or she may anticipate from the other's estate. The minimum statutory share of a surviving spouse in the real and personal estate of the deceased spouse is that provided in event of

intestacy if there are both a spouse and descendants, namely, a one-third interest therein to the surviving spouse. The surviving spouse takes one half of the estate if there is no descendant. Ill. Rev. Stat. 1971, ch. 3, pars. 11, 16.

A surviving spouse may renounce a will, and by doing so will receive this minimum share. (Ill. Rev. Stat. 1963, ch. 3, par. 16.) The question in the case at bar is whether a "Totten Trust" is sufficiently testamentary in nature that by analogy the statutory policy of permitting a surviving spouse to renounce under the decedent's will and share in the proceeds of such estate should be applicable to such trust to the same extent as to an estate passing under a will.

Some cases suggest that the answer should depend upon the intent of the deceased spouse in creating the trust. This intent may be revealed by the myriad of attendant circumstances that include the secretive nature in which the decedent acted, what he may have said to others with respect to his intent, the proximity in time between the transfer and death, the size of the estate and the amount otherwise left to the surviving spouse, and, generally, all factors which might be indicative of an intent to defraud the surviving spouse of his or her statutory share. (*Rose v. St. Louis Union Trust Co. (1969), 43 Ill.2d 312, 316, 317.*) At the same time, our courts have recognized that one may dispose of his property during his lifetime and thus deprive a spouse of his, or her, statutory share, so long as the disposition was sufficiently effective and complete, unless the transaction is illusory or tantamount to fraud. *Holmes v. Mims (1953), 1 Ill.2d 274, 279; Padfield v. Padfield (1875), 78 Ill. 16, 18, 19.*

The infirmities and difficulties in determining the intent of the decedent in connection with an *inter vivos* transfer of his personal property and in ascertaining whether such intent is so tainted with fraud as to cause such transfer to be ineffective in the deprivation of a

spouse of his, or her, statutory share in the decedent's estate are readily apparent. *Rose v. St. Louis Union Trust Co. (1969), 43 Ill.2d 312, 316, 317.*

In the case at bar the settlor was also the trustee. During her lifetime she retained absolute, unqualified control over the bank accounts, and possessed and exercised all incidents of complete ownership, including the right to receive interest payable thereon and withdraw the principal thereof. The enjoyment of the proceeds of the accounts by the beneficiary or beneficiaries named therein would arise only upon the death of the settlor-trustee with the accounts remaining intact.

Under these circumstances, the expressed statutory policy of protecting a surviving spouse's statutory share in the estate should prevail, regardless of the intent of the deceased spouse in creating the savings-account trust. In *Blankenship v. Hall (1908), 233 Ill. 116,* at page 129, this court stated: "There has been a manifest desire on the part of the lawmakers of this State to provide for the support of the wife, not only during the lifetime of the husband but also after his death, until, as this court said in *In re Taylor's Will, 55 Ill. 252,* on page 259: 'We do not go too far when we say that it has become a sort of common law in this State that this support shall be in all cases one third of the husband's real estate for life, and one third of the personal estate forever, which shall remain after the payment of debts.' "

In *Newman v. Dore (1937), 275 N.Y. 371, 379, 9 N.E.2d 966, 968,* the court, in considering the right of a surviving spouse in the property of the deceased spouse, stated: "Motive or intent is an unsatisfactory test of the validity of a transfer of property." The court further stated, with reference to the rights of a surviving spouse, that "the only sound test of the validity of a challenged transfer is whether it is real or illusory." (275 N.Y. 371, 379, 9 N.E.2d 966, 969.) The court held that the transfer was illusory and not sufficiently real to deprive the

decedent's spouse of her statutory share in his estate. Other cases have reached the same result. *Krause v. Krause (1941), 285 N.Y. 27, 32 N.E.2d 779; Steixner v. Bowery Savings Bank (Sup. Ct. 1949), 86 N.Y.S.2d 747; MacGregor v. Fox (1952), 280 App. Div. 435, 114 N.Y.S.2d 286.*

Text writers have concluded that the control retained over a savings-account trust is so complete that even though the trust is valid, it should not be so as against the surviving spouse. In commenting upon dictum suggesting that a savings deposit in trust for another would be an effective method of cutting out a depositor's surviving spouse, Scott (1 A. Scott, Law of Trusts, sec. 58.5, at 546-547 (3d ed. 1967)) states:

> "It would seem that a strong argument could be made against this result, on the ground that it violates the policy of the statute which gives a distributive share of the decedent's estate to the surviving spouse. It is true that it is generally held that the creation of a revocable trust is sufficient to cut out the surviving spouse, at least if the settlor does not reserve too great a control over the property. In the case of the savings-deposit trust, however, the depositor reserves such complete control that it would seem that, even though the trust is valid as against the personal representative of the depositor, it should not be valid as against the surviving spouse. Certainly the policy underlying the statute protecting the surviving spouse is stronger than the policy underlying the statute providing for certain formalities to evidence a testamentary disposition. It may well be held that the creation of a savings deposit trust is valid but not effective to cut out the surviving spouse."

Also see: Bogert, Law of Trusts and Trustees, sec. 47, at 340-341 (2d ed. 1965).

While we recognize the general validity of "Totten" savings-account trusts for the reasons set forth above, we conclude that the savings-account trusts in question were illusory and invalid as against Dr. Montgomery and that they did not deprive him of his statutory share in his deceased spouse's estate. The trial court order, which was

affirmed by the appellate court, provided that the funeral bill of the decedent be paid from the savings bank accounts in question, and that the banks distribute the balance of the said accounts to the beneficiaries named therein. This order properly directed the payment of the funeral bill from said accounts, if such funds were needed therefor. In the event funds from other property are insufficient to pay debts and claims against the decedent's estate, then such trust funds are available for the payment of estate debts and can also be reached for the payment of the expenses of administering the estate if there is not sufficient other property for this purpose, but they are not chargeable with the payment of legacies. (*In re Will of Morton (Sur. Ct. 1969), 61 Misc. 2d 624, 305 N.Y.S.2d 555, 557; In re Reich's Estate (Sur. Ct. 1933), 146 Misc. 616, 262 N.Y.S. 623, 628.*) The ALI Restatement of the Law of Trusts (2d ed. 1959), sec. 58, comment d (Creditors of depositor), states: "Although creditors of the settlor cannot reach the trust property merely because he has reserved a power of revocation (see sec. 330, comment o), creditors of a person who make a savings deposit upon a tentative trust [Totten] can reach his interest, since he has such extensive powers over the deposit as to justify treating him as in substance the unrestricted owner of the deposit. So also, on death of the depositor if the deposit is needed for the payment of his debts, his creditors can reach it. So also, if it is needed it can be applied to the payment of his funeral expenses and the expenses of the administration of his estate, if he has not sufficient other property which can be applied for these purposes.

In all other respects the order was erroneous. The balances in the savings-account trusts should be treated as the property of the decedent for the purpose of determining Dr. Montgomery's statutory share in his deceased spouse's estate, and, if necessary, he may draw upon the varying amounts in the respective trust accounts on a proportionate basis to the extent required to pay him one

third of the net estate remaining after payment of all just claims. Such claims would include a surviving spouse's award, if such an award is appropriate, as well as the costs of administering the estate. (Ill. Rev. Stat. 1971, ch. 3, par. 202.) Thereafter the balance remaining in the accounts should be distributed to the beneficiaries named in the trust accounts.

Accordingly, the judgment of the appellate court is reversed in part and affirmed in part, and the cause is remanded to the circuit court for further proceedings not inconsistent with the views expressed herein.

In view of the nature of the proceeding below, we believe it appropriate on remand to specify that respondents be given the opportunity to file an answer to the petition and to present evidence, if there be any, of any defense that might be available to them in view of the conclusions expressed herein.

*Affirmed in part and reversed in part and remanded.*