MICHAEL MIS, Plaintiff-Appellee, Cross-Appellant, *v.* JEAN MINDYKOWSKI, Defendant-Appellant, Cross-Appellee.

(No. 58642;

First District (1st Division)—November, 4, 1974.

*Rehearing denied December 17, 1974.*

Raymond I. Suekoff and Martin L. Silverman, both of Chicago (Suekoff and Silverman, of counsel), for appellant.

John C. Ambrose and Philip J. Schmidt, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Michael Mis, filed a four-count complaint against the defendant, Jean Mindykowski. After a trial in which only the plaintiff and the defendant testified, the Court entered judgment for the defendant on Counts I and III and for the plaintiff on Count IV and fixed damages at $6500. The Court had previously struck Count II, which the plaintiff contends pleaded a resulting trust, at the close of the plaintiff's case. The defendant appeals from the judgment in favor of the plaintiff on Count IV and the plaintiff appeals from the judgment in favor of the defendant on Counts I and III and the order striking Count II.

The plaintiff was a member of the Polish Army in exile and fought with the Allied Army in Belgium in World War II. In 1948, he was in a

camp in England. Marie Zawada and her daughter, the defendant, were members of the Polish Women's Alliance. One of the objectives of the Alliance was to assist anti-Communist soldiers in the Polish Army to avoid repatriation to Poland. One method developed to achieve that objective was to arrange marriages between the soldiers and American widows. The plaintiff had corresponded with Marie Zawada since 1940, and they had discussed marriage. According to the defendant's testimony, the widows were concerned about the effect of their marriage on their property rights and were assured by the Alliance that the men would have no claim on their property; this was part of the Alliance's policy. Marie Zawada wrote to the plaintiff that he did not have to work and that she had a home; she sent him $50 a week from her savings. He was earning 1½ shillings (30 cents) a day at the time. She came to England in 1948, and they were married in November. At the time of her marriage, she held title in her own name to a rooming house at 1910 North Sawyer in Chicago. She was making a living and saving money by operating the rooming house and buying and selling real estate. She also received Social Security.

When the plaintiff entered the United States, he did not work for the first 3 months. Shortly afterwards, he purchased an automobile for $2550. The plaintiff testified that his wife did not provide all of the money for him to buy the car and that he saved money in the army. He worked for one company for 4½ years making $1.60 per hour. He went to work for another company, again making $1.60 per hour and worked for it for 20 years. At the time of trial he was still working for it. The record does not reflect how much he was receiving at the time of trial. He turned over all his paychecks to his wife, and she gave him an allowance for bus fare. His wife provided food and clothing and "all facilities of the house."

In July, 1952, his wife purchased a residence at 2718 North Merrimac for $15,000. She used $10,000 that she took from her bank savings. The remaining $5000 was supplied by a mortgage which was signed by the plaintiff and his wife and the defendant and her husband. All of them were present at the closing, and the property was conveyed by the sellers to the defendant and her mother as joint tenants.

The plaintiff and his wife did not move into the Merrimac property until 2 or 3 years after its purchase. During that period of time the house was rented to the defendant's daughter, and the plaintiff and his wife continued to reside at the Sawyer Avenue address. Later, the Sawyer Avenue property was sold, and the plaintiff and his wife lived in the Merrimac property for about 15 years until her death. The plaintiff did not give his wife any money for the purchase of the property. She paid

all taxes. The final payment on the property was made in 1960, and the mortgage was released.

His wife died on November 12, 1968. The plaintiff vacated the Merrimac residence upon receipt of a notice to pay rent from the defendant's lawyer. On February 27, 1969, the defendant conveyed the property to a land trust at Parkway Bank & Trust Company. This suit was filed in June, 1969.

The plaintiff advances three theories to support a finding that he should be declared owner of all or part of the property at 2718 North Merriamic: actual fraud, constructive fraud, and a resulting trust; and quasi contract or money had and received to support the judgment of $6500 in his favor.

The plaintiff testified through an interpreter that he signed the mortgage on the Merrimac property but did not remember where he signed it. He did remember going to the Northwestern Savings & Loan Association after he signed the document. When he signed it. no one talked to him about it; "they" told him to sign it, but "they" didn't explain it. Either his wife or the defendant told him to sign but didn't tell him why he was to sign. He saw the defendant and her husband sign it, but he never talked to the defendant about the property. On cross-examination he testified that his wife told him to sign it; and when he signed it, she said, "It's ours."

The defendant testified that at the closing she was told by the real estate manager, the lawyer and her mother to tell the plaintiff in Polish the reason they needed his signature. Her mother had previously told her to ask Mr. Lambert, the real estate manager, why the plaintiff had to sign. Lambert told her that the plaintiff's signature was required because an application for a mortgage was to be made. Her mother said, "Explain to him [the plaintiff] because he is going to think he owns this property." The defendant then "just did the explaining as for the signature, why the signature was there."

This testimony of the plaintiff and the defendant represents all the evidence pertinent to the question of actual fraud and, as is apparent, is completely devoid of proof of misrepresentation made to the plaintiff.

As to constructive fraud, the plaintiff did not plead it. In Count I the plaintiff maintained that "he was assured that a new home was jointly purchased with his wife, Mary"; "that the defendant well knew that plaintiff relied on *representations* that he was a co-owner of this residence with his wife, Mary" (emphasis added); that a confidential relationship existed between the defendant and her mother and "through her control of her mother the defendant, Jean Mindykowski, procured the conveyance of this residence as joint tenant with intent to defraud

plaintiff." Count III alleges that the defendant conspired with the plaintiff's wife to defraud and deprive the plaintiff of his interest in the property.

■■ Proof without pleadings is as defective as pleadings without proof (*Burke v. Burke*, 12 Ill.2d 483, 487, 147 N.E.2d 373); and although the plaintiff argued constructive fraud in the trial court, the record does not show any waiver by the conduct of the defendant. (*Cf. Hemingway v. Skinner Engineering Co.*, 117 Ill.App.2d 452, 254 N.E.2d 133.) Moreover, we judge that the trial court concluded that the evidence failed to support a finding of constructive fraud of the marital rights of the defendant. We see no reason to conclude otherwise. The evidence fails to establish a fiduciary relationship between the defendant and her mother or between the defendant and the plaintiff, a breach of any fiduciary relationship, that anyone "assured" the plaintiff that a new home was jointly purchased for him and his wife, or that his wife and the defendant conspired to defraud him. The cases cited by the plaintiff are factually inapposite: *Montgomery v. Michaels*, 54 Ill.2d 532, 301 N.E.2d 465; *Stoxen v. Stoxen*, 6 Ill.App.3d 445, 285 N.E.2d 198; *Wennerholm v. Wennerholm*, 382 Ill. 254, 46 N.E.2d 939; *Smith v. Northern Trust Co.*, 322 Ill.App. 168, 54 N.E.2d 75.

■■ A resulting trust comes into existence when one person furnishes the consideration for the purchase of property while the conveyance is taken in the name of another person. (*Janes v. First Federal Saving & Loan Ass'n*, 11 Ill.App.3d 631, 638, 297 N.E.2d 255.) It is created by operation of law the instant legal title is taken, based upon a presumed intent of the parties. (*Kane v. Johnson*, 397 Ill. 112, 73 N.E.2d 321.) The burden of proof is upon the party seeking to establish the trust, and the evidence must be clear and convincing (*Scanlon v. Scanlon*, 6 Ill.2d 224, 127 N.E.2d 435). The record clearly shows that the $10,000 down payment was made from the funds of the plaintiff's wife. Subsequently, his wife made the payments of $52 per month. She was of some financial substance at the time of their marriage. She bought him a car (or, at least, contributed the major portion of the purchase price) for $2550 shortly after he arrived in this country. She bought and sold property and operated a rooming house. The defendant testified that her mother was able to live off her interest. She was able to buy the Merrimac property while retaining the property on Sawyer, which belonged to her alone at the time of the marriage. Some years later she moved into the Merrimac property and sold the Sawyer property. The proceeds of that sale clearly belonged to her alone since she owned the property in fee simple long before her marriage. It is not unreasonable to assume that if she was able to make payments of $50 a week to the plaintiff while

he was in England, she was also able to make payments of $52 per month out of her own funds. The plaintiff in no way has proved that his money was used to pay off the mortgage.

■■■ Where a parent purchases property in the name of a child, there exists a presumption that the property was transferred to the child as a gift. (*Moore v. Moore*, 9 Ill.2d 556, 138 N.E.2d 562.) No evidence has been introduced to rebut that presumption. That being so, the plaintiff's wife had an absolute right to dispose of her property during her lifetime, and the deprivation of any expectation on the part of the plaintiff by a gift to the defendant is not vulnerable to attack unless the transaction is a sham, colorable or illusory and tantamount to fraud. (*Johnson v. Johnson*, 11 Ill.App.3d 681, 684, 297 N.E.2d 285.) As previously noted, there is no evidence of fraud. We conclude, therefore, that the plaintiff has failed to provide any evidence to support a finding of a resulting trust.

Count IV, which apparently was the basis of the trial court's judgment of $6500 in favor of the plaintiff, alleged that since the marriage the plaintiff had been the only person employed in the family; that all funds earned by him were turned over to his wife to be used and managed for the mutual benefit of the parties; that the plaintiff and his wife "lived frugally, intending to save substantial portions of his earnings to insure worry-free life after retirement"; that after the death of his wife the plaintiff found that "the funds that he was turning over to his wife throughout their life together were either deposited in joint bank accounts established by his wife for others, or were dissipated by conditional gifts or pseudo-loans"; that the plaintiff on information and belief stated that one of the persons who had received plaintiff's funds was the defendant; and that the making of the loans, the giving of gifts and the establishment of the joint bank accounts was a fraud on the rights of the plaintiff.

■■ Count IV, as is apparent, is also based on fraud, and the fraud as alleged could only have been committed by the plaintiff's wife. There is no evidence to support such a finding, nor, for that matter, fraud on anyone's part. Assuming, however, for the sake of argument that the defendant had properly pleaded an action for money had and received, we would still be required to hold that he had not proved it. The nature of the action has been described by the case cited by the plaintiff, *Beatrice Foods Co. v. Gallagher*, 47 Ill.App.2d 9, 25-26, 197 N.E.2d 274:

> "The liability in quasi contract exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. In implied contracts the agreement defines the duty. In quasi contracts the duty defines the contract.

At common law an action of assumpsit, under the common counts for money had and received, is an appropriate remedy to enforce the equitable obligation arising from the receipt of money by one person which belongs to another and which in equity and justice should be returned. The action is in form ex contractu. The right to recover is governed by principles of equity although the action is at law. It is maintainable in all cases *where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it* and which ex aequo et bono belongs to another." (Emphasis added.)

■■ The plaintiff, then, had the burden of proving that the defendant was retaining money which properly belonged to the plaintiff. If the plaintiff's position is correct, then his wife retained money which belonged to him. Could the plaintiff have maintained an action against his wife to recover the money he turned over to her? Obviously not. He never established how much he paid. He was subject to the obligation to provide for his wife. There is no proof that his wife had any surplus left from the amount he paid after paying normal household bills. For that matter, there is no showing that the amount he paid was sufficient to pay all household bills. That she had a substantial sum of money before her marriage and income, including Social Security payments, cannot be ignored. The defendant and her mother had a joint account with $20,000 in it; and the account had been in existence from 1943, 5 years before the marriage. There was another joint account in the name of the plaintiff's wife and the defendant's daughter. The amount in that account was never established. There is absolutely no evidence to support the allegation of the complaint that "the funds that [the plaintiff] was turning over to his wife throughout their life together were either deposited in joint bank accounts established by his wife for others or were dissipated by conditional gifts or pseudo-loans." In short, the plaintiff has failed to establish any right to recover for monies had and received.

For these reasons the judgments in favor of the defendant on Counts I, II, and III are affirmed; and the judgment in favor of the plaintiff and against the defendant on Count IV is reversed.

Judgment affirmed in part and reversed in part.

BURKE and GOLDBERG, JJ., concur.