In re ESTATE OF JOHN VERNON ELLIOTT, Deceased.—(HELEN H. ELLIOTT, Petitioner-Appellant, v. OLYMPIA ALEXSON, Respondent-Appellee.)

(No. 61448;

First District (1st Division)—November 3, 1975.

Francis X. Cuisinier, of Chicago, for appellant.

A. J. Hardiman, of Chicago, for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

By citation proceedings instituted in the estate of her deceased husband, the petitioner, Helen H. Elliott, sought her statutory share in the beneficial interests of two land trusts. These interests were held by the respondent, Olympia Alexson, and the decedent as joint tenants with right of survivorship. The corpus of one trust was a condominium apartment in Chicago with a present value of approximately $150,000 and the corpus of the other was a home in Palm Springs, California, worth $90,000. Decedent, John V. Elliott, had the sole power of direction in both trusts, a fact known by respondent.

The decedent died testate, and a downtown Chicago bank was appointed executor. The inventory filed by the executor listed $450,000 in assets. The executor did not include the property which is the subject of this proceeding in the inventory of assets and refused to petition for a citation to issue to recover these properties for the estate. Except for bequests in a small sum to an adopted child and of jewelry and household effects to the respondent, the residuary clause of the will provided that the assets of the estate were to pass in the following proportions: petitioner 38 percent, respondent 36 percent and a sister of decedent 18 percent. These shares were increased by their proportionate amounts of a lapsed legacy of the remaining 8 percent to decedent's brother who

predeceased him. The petitioner did not renounce the will within the time provided by statute. At the end of the petitioner's case, the circuit court denied her amended citation petition and discharged the respondent.

Mr. Elliott remained married to the petitioner, but had been living separate and apart from her since at least 1958. He met the respondent in 1957, and they lived together in the Chicago apartment and the Palm Springs home from 1966 until his death on November 7, 1973. He purchased the condominium apartment in 1966 and in March 1968 assigned the beneficial interest in the land trust to respondent and himself as joint tenants. The respondent accepted the assignment in writing on the day it was made. The home in Palm Springs was purchased in March 1970, title being taken in a land trust with the respondent and decedent designated as beneficiaries holding their interests as joint tenants. The respondent agreed in writing to this arrangement and to the trust instrument. She did not contribute funds for the purchase of either property.

The issues raised by the petitioner's appeal are: Whether the decision in *Montgomery v. Michaels* (1973), 54 Ill.2d 532, 301 N.E.2d 465, controls the disposition of this appeal; whether the surviving spouse is entitled to the statutory share she is claiming even though she failed to renounce her husband's will; and whether beneficial interests in land trusts held in joint tenancy by the testator with another where the settlor reserved the sole power of direction are for that reason testamentary in character and illusory. Our conclusion on all three issues is in the negative and in favor of the respondent.

The traditional rules applicable to the validity of *inter vivos* trusts and the right of a surviving joint tenant to the ownership of the interest of the deceased joint tenant lead to the conclusion that the respondent as the surviving joint tenant succeeded to the decedent's beneficial interest. (*Frey v. Wubbena* (1962), 26 Ill.2d 62, 185 N.E.2d 850; *Farkas v. Williams* (1955), 5 Ill.2d 417, 125 N.E.2d 600; *Merchants National Bank v. Weinold* (1956), 12 Ill.App.2d 209, 138 N.E.2d 840.) The cases which hold that the understanding creation of a joint tenancy establishes a presumption of a gift to the survivor which can be overcome only by clear and convincing evidence that no gift was intended, particularly where, as in this case, the joint interest was not established for the convenience of the decedent, also support the respondent's position. *Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill.2d 587, 202 N.E.2d 470; *In re Estate of Marx* (1973), 11 Ill.App.3d 727, 297 N.E.2d 637; *In re Estate of Pokorney* (1968), 99 Ill.App.2d 230, 240 N.E.2d 740; *In re Estate of Weaver* (1966), 75 Ill.App.2d 227, 220 N.E.2d 321.

The petitioner attacks these conclusions urging that they are inconsistent with the holding in *Montgomery* which she contends established the rule that an *inter vivos* trust cannot deprive a surviving spouse of her statutory share in the property of the deceased spouse. This argument requires us to review *Montgomery* and *In re Estate of Petralia* (1965), 32 Ill.2d 134, 204 N.E.2d 1, both involving the validity of *inter vivos* trusts. Both cases dealt with savings-account trusts, sometimes referred to as Totten Trusts. The court held in *Petralia* that notwithstanding the extensive control a settlor retains over a Totten Trust, such a trust is not a testamentary disposition. *Montgomery*, which held that a Totten Trust is not effective to defeat a surviving spouse's statutory share in the estate of his deceased spouse, created an exception to the rule set forth in *Petralia*. We read *Montgomery* to relate only to Totten Trusts, and not to other types of *inter vivos* trusts. The court emphasized that a Totten Trust is distinguishable from other trusts because of the complete control over the bank account exercised by the depositor, and that is the reason for the holding that such a trust should not be effective to cut out the distributive share of a surviving spouse. Since the trusts in which petitioner seeks to share are not Totten Trusts, petitioner's reliance on *Montgomery* is misplaced.

■■ Moreover, an element not present in the case of a Totten Trust is that the decedent in this case divested himself of the assets in question by placing the legal titles in disinterested third-party professional trustees. The respondent became the owner of a vested beneficial interest in the trusts when each joint tenancy was created. The retention by the settlor of the power to convey, which (unlike the situation in *Montgomery* where the decedent made frequent withdrawals from each account) he never exercised did not divest the respondent of her interest. (*Farkas v. Williams* (1955), 5 Ill.2d 417, 125 N.E.2d 600; *Merchants National Bank v. Weinold* (1956), 12 Ill.App.2d 209, 138 N.E.2d 840.) In contrast to *Montgomery*, Mr. Elliott died testate leaving a substantial estate with more than adequate funds to pay the costs of administration, and his will contained an all-inclusive residuary clause under which his surviving spouse receives approximately 41 percent of the estate.

■■ The decision in *Montgomery* setting aside the Totten Trust was reached in order to protect the statutory share of a surviving spouse. That holding should, therefore, be applied only in situations where a surviving spouse is attacking an *inter vivos* trust in order to claim his or her statutory share. Although petitioner in this case claims to be seeking her statutory share in the corpus of the trusts, this argument is misleading. The residuary clause of the testator's will is all-inclusive, and if the trusts in question are held invalid, the assets of both trusts would

become part of the residuary estate. The petitioner has not renounced the will in order to take her statutory share in preference to the portion of the residuary she was bequeathed by the will, and the statutory time within which she could renounce has expired. The failure of the petitioner to renounce prevents her from making any claim to a statutory share under section 16 of the Probate Act (Ill. Rev. Stat. 1973, ch. 3, § 16), and for that reason and because there is no property which could pass intestate, *Montgomery* is inapplicable to the petitioner's claim. This conclusion is not inconsistent with *Ness v. Lunde* (1946), 394 Ill. 286, 68 N.E. 458, on which petitioner relies, and *Bradshaw v. Lewis* (1973), 54 Ill.2d 304, 296 N.E.2d 747, where the wills lacked clauses directing how the residuary was to be distributed, and the conclusion, therefore, was that the residuary passed intestate.

■■ The petitioner's theory that the trusts are testamentary in character and illusory and, therefore, invalid because of the reservation by the settlor of the power to convey is not supported by the decisions of Illinois courts. Even in *Montgomery,* the court relying on *Holmes v. Mims* (1953), 1 Ill.2d 274, 279, 115 N.E.2d 790, acknowledged that "one may dispose of his property during his lifetime and thus deprive a spouse of his, or her, statutory share, so long as the disposition was sufficiently effective and complete, unless the transaction is illusory or tantamount to fraud." The petitioner does not allege, and offers no proof of fraud; she alleges only that the trusts were illusory. The possibility of destructibility of the interest of a beneficiary does not negate the existence of a valid trust. (*Montgomery v. Michaels* (1973), 54 Ill.2d 532, 301 N.E.2d 465; *Farkas v. Williams* (1955), 5 Ill.2d 417, 125 N.E.2d 600; *In re Estate of Taggart* (1973), 15 Ill.App.3d 1079, 1083, 305 N.E.2d 301.) In *Gurnett v. Mutual Life Insurance Co.* (1934), 356 Ill. 612, 622, 191 N.E. 250, the court answered the petitioner's contention by stating:

> "The reservation of the power to revoke an entire trust does not invalidate the agreement presently creating it or render it testamentary. [Citations.]

The trusts established by the decedent were not illusory or for his benefit. On the contrary, they were effective and complete and Mr. Elliott's joint interest in them as a joint tenant with the respondent passed to her upon his death.

Judgment affirmed.

GOLDBERG and EGAN, JJ., concur.