Lila F. Haskell, Appellant, v. The Art Institute of Chicago et al., Appellees.

Gen. No. 40,794.

Heard in the first division of this court for the first district at the October term, 1939. Opinion filed April 8, 1940.

Moses, Kennedy, Stein & Bachrach, of Chicago, for appellant; Walter Bachrach and Arthur Magid, of Chicago, of counsel.

West & Eckhart, Dunbar & Rich, Sidley, McPherson, Austin & Burgess, Cassels, Potter & Bentley and Shortall & Murison, all of Chicago, for appellees; Percy B. Eckhart, Robert F. Spindell and Lewis C. Jesseph, all of Chicago, of counsel.

Mr. Justice O'Connor delivered the opinion of the court.

March 3, 1937, Lila F. Haskell filed her complaint in chancery against the Art Institute of Chicago, a corporation, Frank F. Taylor, David O. Dunbar and Continental Bank and Trust Company of Chicago, a corporation, as executors of the last will and testament of Frederick T. Haskell, deceased. Afterward, January 20, 1939, she filed an amended complaint against the same defendants and a number of others named beneficiaries in the last will and testament of the deceased, praying that the transaction between Frederick T. Haskell and the Art Institute, as evidenced by two written documents, be decreed to not constitute a gift of 40 pictures from Haskell to the Art Institute; that the two documents be held fraudulent and void and that the executors inventory the paintings as a part of the assets of the estate. Defendants filed motions to dismiss the suit on the ground that the amended complaint did not state a cause of action. The motions were sustained, the suit dismissed and plaintiff prosecutes this appeal.

The allegations of the amended complaint are that plaintiff and Frederick T. Haskell, the decedent, were married December 19, 1919, and lived together until August 11, 1931, when there was a separation and plaintiff lived separate and apart from her husband continuously until his death September 13, 1935. Sep-

tember 22, 1931, she filed a suit against him for separate maintenance which was pending and undisposed of when he died. No children were born of the marriage or of any prior marriage of Mr. Haskell. Between June 1, 1933 and September 13, 1935, there were no persons who, in case of Mr. Haskell's death, would be heirs-at-law other than Mrs. Haskell, Frederick J. Flagg, his nephew, and Annette H. Flagg, his niece.

For some time prior to their separation and continuously until his death Mr. Haskell maintained an apartment at 1200 Lake Shore drive as his residence and an office on LaSalle street, in Chicago. He owned the 40 valuable paintings which he had accumulated over a period of years—38 of them hung in his apartment and the other 2 in his office. On or about June 17, 1935, he was seriously ill in his apartment and under the care of nurses. He was 81 years old. Chauncey McCormick, vice-president of the Art Institute, was at the apartment and at that time a written agreement was entered into between the Art Institute, represented by Mr. McCormick, and Mr. Haskell, in which it is stated that Mr. Haskell "has assigned, transferred and delivered and by these presents does assign, transfer and deliver to the party of the first part [Art Institute] the paintings and other art objects described in the schedule hereto attached, and made a part hereof and designated 'SCHEDULE OF THE PAINTINGS AND OTHER ART OBJECTS INCLUDED IN THE GIFT OF JUNE 17, 1935, FROM FREDERICK T. HASKELL, TO THE ART INSTITUTE OF CHICAGO,' and the party of the first part [Art Institute] hereby acknowledges receipt of and accepts the said paintings and other art objects of the party of the second part [Mr. Haskell] and agrees with respect thereto as follows." Then follow provisions that the paintings shall be designated "THE FREDERICK T. HASKELL COLLECTION" and such of the paintings as in the judgment of a committee of the Board of Trustees of the Art Institute are appropriate, shall be exhibited

by the Art Institute as a part of its general collection and the paintings appropriately labeled. Those not appropriate in the judgment of the committee may be disposed of and the proceeds derived therefrom deposited by the Art Institute in a fund known as the "FREDERICK T. HASKELL FUND" which shall be used, first, for the care, upkeep and maintenance of the paintings and other art objects in the Haskell collection and, second, for the purchase of other paintings or works of art for the Frederick T. Haskell collection which shall be also appropriately labeled as gifts of Frederick T. Haskell. The agreement was signed by Mr. Haskell and by Mr. McCormick, as vice-president and Mr. Harshe, as director of the Art Institute. Three days after the agreement was executed, Mr. McCormick as vice-president of the Art Institute, wrote Mr. Haskell the following letter: "June 20, 1935. At the meeting of the Board of Trustees of the Art Institute of Chicago today I was authorized as Vice-President to write you in connection with the forty paintings which you have given to the Museum and which the Board of Trustees has accepted in the terms and conditions of the contract signed by you and by me and by Dr. Harshe under date of June 17. The Board of Trustees has authorized me to say to you that we are entirely willing and agreeable to leave the forty pictures which now belong to the Art Institute in your care and custody, thirty-eight of them now being in your apartment on Lake Shore Drive, and two of them in your office at 231 South La Salle Street, for the period of one year from this date, provided and with the understanding and agreement that you will give these pictures the same care and protection which you have given them heretofore during the period they belonged to you and that from this date you will carry the same amount of insurance on them in the name of the Art Institute of Chicago which you formerly carried in your name.

"The Board expressed its great appreciation of the gift to which I would again like to add my thanks."

At the bottom was written in longhand, "Will you please sign the duplicate and return to me at the above address." Upon receipt of the letter and duplicate, Mr. Haskell signed his name to the duplicate, returned it to the Art Institute and retained the original. July 5, 1935, 15 days after the date of the letter, Mr. Haskell executed his last will and testament which on October 29, 1935, was admitted to probate by the probate court of Cook county, and February 8, 1936, Mrs. Haskell renounced under the will and elected to take as surviving widow under the law.

A number of bequests are provided for in the will aggregating $456,000. In the 19th Article of the will the testator said: "I have heretofore at different times transferred by bill of sale and symbolical delivery, or by contract, to certain persons and to institutions, various articles of furniture, jewelry, china, silverware, tableware, linens, objects of art, painting and other household goods and effects which I am now using under the terms of certain leases thereof or have in my possession as custodian thereof.

"I hereby reaffirm and confirm each of said transfers and I hereby direct my Executors, . . . to surrender and deliver all of said articles . . . paintings and household goods and effects to the persons and institutions to whom the same have been so transferred by me. In case any of said transfers shall have failed for any reason to have transferred the legal title and beneficial ownership of said . . . paintings . . . to the persons and institutions named and designated in said transfers respectively, then I hereby specifically give and bequeath said . . . paintings . . . to the persons and institutions respectively named in such transfer as the transferees thereof."

By the 24th Article of the will, the testator provided that, after the payment of his debts, taxes on his es-

tate and on the various bequests and the payment of costs and expenses of administration, ''I give and bequeath to my wife, Lila Frances Haskell, if she shall survive me and be my wife at the time of my death, one-half, (½) of my net estate then remaining'' in lieu of all statutory rights of dower, homestead and widow's award which she might have in his estate.

The 25th Article disposes of the residue of the estate.

It is further alleged in the amended complaint that the execution of the agreement of June 17, 1935, by Mr. Haskell and the Art Institute and the letter of June 20, were to make it appear that title to the 40 pictures had passed to the Art Institute, whereas the actual intent of the parties was that Mr. Haskell retain title to the paintings for life as well as the possession, use and enjoyment thereof, the purpose of which was to prevent Mrs. Haskell, in the event she survived him, from sharing in the value of the paintings as a part of the estate.

. Plaintiff contends that the claimed gift of the paintings by Mr. Haskell to the Art Institute which ''purported to pass title and dominion to the Art Institute but was in fact subject to a secret agreement and understanding between the parties that Mr. Haskell should retain title, dominion, possession and enjoyment until his death, was a colorable and illusory transfer, and may be set aside by plaintiff as having been made with a fraudulent intent to deprive her of her legal rights as surviving widow in the personal estate left by Mr. Haskell on his death.'' The law is well settled that a husband may dispose absolutely of his property during his lifetime even though he intended to deprive his wife of her right to take one-half of such property where she renounces the provisions of the will. If the gift or disposition of the property, however, is but a scheme of the husband to deprive the wife of her property rights, at the same time retaining the benefits of

the property himself during his lifetime, the transaction may be set aside. *Padfield v. Padfield,* 78 Ill. 16; *Blankenship v. Hall,* 233 Ill. 116; *Patterson v. McClenathan,* 296 Ill. 475.

In the *Padfield* case, the widow filed her bill in chancery alleging that her late husband, in his lifetime, for the purpose of evading the statute and to deprive her at his death of any share in his personal estate, transferred notes to his son, William. The court there said: "it us urged that this transaction was void as to plaintiff in error; that, under our statute, a husband has no power to dispose of his personal property so as to deprive his wife of her distributive share therein, and that the demurrer admits the allegation that this transfer was made for the purpose of evading the statute, and preventing her from sharing in his personal property. The doctrine is correctly stated in Kerr on Fraud and Mistake, 220, in a note. It is there said: 'There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be *bona fide,* and no right is reserved to him, though made to defeat the right of the wife, it will be good against her.' . . .

"It is true that, where a husband still retained the right to control the property, and resume the same at pleasure, such a gift was held to be in fraud of the rights of his wife. But there, the transfer was only colorable, the title still being in the husband, and, being thus entitled, the wife could claim and recover her share, on the death of the husband." In the instant case, if the title to the paintings passed from Mr. Haskell to the Art Institute regardless of what his intentions were, there was no fraud—"there can be no fraud

where no *right* of any person is invaded.'' (*Newman v. Dore,* 275 N. Y. 371.)

Counsel for plaintiff say: ''It is not the form of the conveyance, assailed as colorable, which is controlling, but the actual intent of the parties thereto''; that the amended complaint ''explicitly charges that Mr. Haskell did not actually intend to divest himself of the ownership of the paintings; that he and the Art Institute had an understanding and agreement for the retention by Mr. Haskell of title, dominion, possession and enjoyment until his death'' and that the documents of June 17 and 20, 1935, were prepared for the purpose of concealing the true intention and understanding of the parties to make it appear that a completed disposition *inter vivos* had been made. ''The charge of fraud is predicated upon the existence of the secret understanding not to make a present transfer of title, dominion and control, and upon the concealment of the true understanding by the preparation of the colorable documents.'' That the allegation of a ''secret agreement and understanding, standing alone, is a well pleaded averment of ultimate fact''; that other allegations are that the paintings were Mr. Haskell's personal collection and form a part of the furnishings and decorations of his home and office; that he desired to continue in the possession, use and enjoyment of the paintings during his lifetime. He was 81 years old, in a bad state of health, under the care of nurses and believed his death was imminent; that his wife had a separate maintenance suit pending against him; that he did not wish her to share in the value of the paintings as a part of his estate and yet he was unwilling to denude his house and office of the paintings while he lived; that he was having his will prepared at the time and informed Mr. McCormick that he was going to make a specific bequest of the pictures to the Art Institute.

The substance of the charge made in the amended complaint is that Mr. Haskell and the representative

of the Art Institute entered into a fraudulent agreement. In 10 R. C. L. p. 415, in discussing the sufficiency of the allegations of fraud it is said: "An exceptionally high degree of certainty in the allegations of the bill is required in those cases where the cause of action is based on fraud"; that general averments of fraud are wholly inadequate. "In making allegations of fraud, good pleading requires that the plaintiff should state specifically the inculpatory facts in order that they may carry their own conviction of fraud and in order that the wrong-doing may thereby be made more clearly to appear." In *Dickinson v. Dickinson*, 305 Ill. 521, the court said: "A general allegation of fraud, however strong in expression, is insufficient. The bill should point out and state the particular facts and circumstances relied on as constituting the fraud." No general rule can be laid down as to when it is sufficient to plead an ultimate fact and what allegations are sufficiently specific, but the facts in each case must be considered.

In the instant case, in the agreement of June 17, it is specifically stated that Mr. Haskell had transferred and delivered the paintings to the Art Institute and that the Art Institute had accepted them. It further provides how the paintings are to be labeled and displayed and if some of them are thought by a committee of the Art Institute not to be suitable for display, they may be sold and the proceeds realized from such sale, deposited in a fund known as the "Frederick T. Haskell Fund" which is to be used in the care, upkeep and maintenance of the remaining pictures and, secondly, to purchase other works of art which should also be labeled as gifts of Frederick T. Haskell. Likewise, the letter of June 20, from the Art Institute to Mr. Haskell, advises him that the Art Institute has accepted the 40 paintings under the terms and conditions of the agreement of June 17, and that the Art Institute is willing to leave the 40 pictures "which now belong to" it in Mr. Haskell's care for one year with the under-

standing that he shall take the same care of the paintings as he did while they belonged to him. And in the will made July 5, 1935, Mr. Haskell states that at different times he had transferred "by bill of sale and symbolical delivery" some of his personal property, including paintings some of which he was then using under the terms of certain leases; that he confirmed each of the transfers and directed his executors to deliver all of such articles, including the paintings, to the persons and institutions to whom he had transferred such paintings, etc., and as a precaution, the testator stated that in case the transfers failed for any reason, he specifically gave and bequeathed them, including the paintings, to the persons and institutions named in such transfers. From these documents it is clear Mr. Haskell intended to and did transfer the title to the 40 pictures to the Art Institute and they were accepted. He agreed to such acceptance and it was further specifically agreed that he should retain the pictures for one year, provided he took care, etc., of them, as he did before the gift was made. The will again mentions the gift having been made. The agreement was made June 17, the letter written three days later, June 20, and the will July 5. In each of these, the language is clear and specific and shows that Mr. Haskell intended and did make a gift of the paintings to the Art Institute which was accepted. In these circumstances, we think the allegations were not specific enough to require an answer to the complaint.

Plaintiff further contends that the purported gift of the 40 paintings may be set aside under the provisions of sec. 4, of the Statute of Frauds (sec. 4, ch. 59, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 55.04]). In stating this point, counsel say: "Being injuriously affected in her property rights by reason of the colorable transfer made with a fraudulent intent, plaintiff is entitled to invoke the provisions of Section 4 of the Statute of Frauds which declares that transfers of

property (gifts of chattels included) made with the intent to defraud creditors, purchasers and other persons may be set aside as fraudulent and void," and "The purported gift of the paintings is further conclusively fraudulent under Section 6 of the Statute of Frauds, because possession of the paintings was not given to the Art Institute (as is required in the case of a verbal [oral] gift of chattels), but remained with Mr. Haskell during his entire lifetime, nor were the documents of June 17 and June 20, 1935, either acknowledged or recorded (as is required in the case of a deed of gift of chattels)."

The pertinent part of section 4 provides: "Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal, . . . made with the intent to disturb, delay, hinder or defraud creditors or other persons, . . . shall be void as against such creditors, purchasers and other persons." Counsel contend that "other persons" mentioned in sec. 4 is applicable to Mrs. Haskell and since the purported gift was made by Mr. Haskell with the intent to hinder, delay or defraud her, it is void under the statute, and *Tyler v. Tyler,* 126 Ill. 525, is cited. In that case, the injury complained of was to the right of the wife to separate maintenance which was an existing legal right. The court there said: "If the wife be not, technically, a 'creditor,' she surely comes within the language 'other persons,' and she is, obviously, as much injured by such a conveyance as any creditor can be."

Since "there can be no fraud where no *right* of any person is invaded" as said by the New York Court of Appeals (*Newman v. Dore,* 275 N. Y. 371), we think it clear that sec. 4 is inapplicable to the facts in the instant case. Moreover, since we hold that the transfer of the paintings was not colorable but valid, plaintiff's contention cannot be sustained.

As to the contention that sec. 6 of the Statute of Frauds [Ill. Rev. Stat. 1939, ch. 59; Jones Ill. Stats.

Ann. 55.06] renders the purported gift of the paintings conclusively fraudulent. That section provides: "Every conveyance of goods and chattels on consideration not deemed valuable in law shall be taken to be fraudulent, unless the same be by will duly proved and recorded, or by deed in writing duly acknowledged or proved, and recorded as in the case of deeds of real estate, or unless possession shall really and bona fide remain with the donee." Counsel say that since there was no consideration for the pictures, and since the documents of June 17 and June 20 were neither acknowledged nor recorded as in the case of deeds, and since the paintings remained in the possession of Mr. Haskell, the attempted gift, under the statute, is conclusively deemed fraudulent.

What we have said in reference to the nonapplicability of sec. 4, we think applies to the contention now made. Since we hold that the title to the paintings passed by the two documents of June 17 and 20 and the paintings remained in Mr. Haskell's apartment and office by virtue of the letter of June 20, for one year, and since in his will he stated the paintings were in his possession by the terms of a certain "lease," we think the delivery was sufficient and sec. 6 therefore inapplicable.

From what we have said it follows that the contention of plaintiff that "Apart from any question of colorability and fraud, or of the applicability of sections 4 and 6 of the Statute of Frauds, the reservation by Mr. Haskell of the right of possession and enjoyment for one year (or for life) rendered the transaction testamentary in character," cannot be sustained. The gift being complete upon execution of the two documents, the paintings did not pass under the will.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.