Mary Milewski, Appellant, v. Raymond Milewski et al., Appellees.

Gen. No. 45,945.

Opinion filed June 23, 1953. Rehearing denied September 21, 1953. Released for publication September 22, 1953.

MILLER, GORHAM, WESCOTT & ADAMS, of Chicago, for appellant; HERBERT C. DE YOUNG, of Chicago, of counsel.

JOHN P. COGHLAN, and CHARLES J. GALLAGHER, both of Chicago, for appellees; CHARLES J. GALLAGHER, of Chicago, of counsel.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a decree ordering defendant insurance companies to pay the proceeds of certain insurance policies to Raymond Milewski and Florence Hansen, children of the original defendant Lawrence Milewski, now deceased, finding the equities with the defendants, and dismissing the amended complaint and the amendment filed thereto insofar as

they pertain to all matters other than the insurance policies. From this decree plaintiff appeals.

In 1947 Mary Milewski filed suit for separate maintenance against Lawrence Milewski, and on October 16, 1947, a temporary injunction was issued, restraining Lawrence "from selling, transferring, or giving away or in any other manner disposing of any of his assets or property" until the further order of the court. While the injunction was in force, Lawrence revoked the designation of Mary as beneficiary on two insurance policies on his life, designating his daughter, Florence Hansen, as the new beneficiary. On the same day that the writ of injunction was served on Lawrence, Raymond Milewski, his son, withdrew $7,587.50, the balance of a joint savings account held in the names of Lawrence and Raymond. No order for support *pendente lite* and no decree of separate maintenance was ever entered in this suit, and in 1950 Lawrence died.

After Lawrence Milewski's death, Mary filed an amended complaint, making as additional parties defendant Lawrence's children, Raymond Milewski and Florence Hansen, and two insurance companies holding the proceeds of policies on Lawrence's life. The amended complaint, *after setting forth the usual allegations of a complaint for separate maintenance,* alleged that Lawrence Milewski had violated the injunction by substituting his daughter as beneficiary of the insurance policies and by causing his son to withdraw the balance of their joint savings account. Plaintiff later amended her amended complaint, by alleging that she had paid the premiums on the policies out of her own funds throughout her marriage to Lawrence, upon his promise to her of the proceeds. Plaintiff asked that the proceeds of the insurance be paid to her and that Raymond be required to account to her

161

for the amount withdrawn from the joint savings account. Defendant insurance companies filed answers, offering to pay the proceeds into court, and asking to be discharged. Defendants Raymond Milewski and Florence Hansen filed answers, denying plaintiff's claim to the insurance proceeds and to the amount withdrawn from the joint savings account. The chancellor heard evidence on the issues and found *on the evidence* that plaintiff had failed to sustain her burden of proof as to the alleged agreement concerning the insurance policies. The chancellor further ruled that upon the death of Lawrence, the separate maintenance suit abated and that he had lost all jurisdiction to take any proceedings with respect to violation by Lawrence of the temporary injunction order entered in the case, as well as of all other matters involved in the separate maintenance suit.

At the threshold we must determine whether the cause of action retained any vitality after the death of Lawrence. Actions for separate maintenance in Illinois are governed solely by statute. Ill. Rev. Stats., ch. 68, secs. 22, 23 [Jones Ill. Stats. Ann. 109.189, 109.190]; *Plotnitsky v. Plotnitsky,* 241 Ill. App. 166; *Reifschneider v. Reifschneider,* 144 Ill. App. 119. While as a remedial statute, it is to be liberally construed, the object of the statute and, accordingly, the limit of the rights stemming from the statute, is to enable a wife to sue in equity for her support. *Van Dolman v. Van Dolman,* 378 Ill. 98. The rule is very clear that property rights cannot be adjudicated in such a suit. *Olmsted v. Olmsted,* 332 Ill. App. 454; *Petta v. Petta,* 321 Ill. App. 512. Such being the law, we are at a loss to see how plaintiff can cross the threshold. Upon Lawrence's death no decree for separate maintenance could be entered, and it follows, from what was said above, that there was nothing that could be

162

adjudicated in this suit. Whatever argument for waiver may be found in defendants' pleading to the merits, the fact remains that a complaint for separate maintenance cannot survive the death of the defendant husband. And whatever the amendments to the complaint, this suit inherently remained a suit for separate maintenance. Plaintiff must have realized this, for in her amended complaint she has preserved the averments upon which a decree for separate maintenance may be based and, at the same time, acknowledges that no such relief is now obtainable.

Plaintiff argues that Lawrence's violation of the injunction destroyed the status quo, and that a court of equity has inherent power to restore such status quo, and her brief is devoted to a most ample review of decisions sustaining this unquestioned principal. But against a dead husband, defendant in a separate maintenance suit, the "strong lance of justice hurtless strikes." Death has deprived the chancellor of his power to protect his order, which was only temporary, and which could only have been granted to assure a fund out of which separate maintenance could be paid. The injunction was not designed to protect the rights of Mary, as a widow, in the estate of her deceased husband. As incident to a separate maintenance suit, it could not have such a purpose. If Lawrence were alive, the court below might have "restored the status quo." But such restoration would have been solely for the purpose of preserving a fund for the entry of a separate maintenance award. That the court would have done so is by no means a certainty, because for three years following commencement of the suit and issuance of the temporary injunction, no order for support had been obtained by plaintiff. For the court now to require a restoration of plaintiff as a beneficiary, because of violation of the

163

injunction by Lawrence, would be a decision on the title to the proceeds in order to compel compliance with a temporary order in nowise designed to determine such title.

Plaintiff urges that, in any event, she paid the premiums on the insurance pursuant to an agreement with Lawrence promising her the proceeds. What we have already said concerning the effect of Lawrence's death upon this suit makes clear that plaintiff cannot use this suit to secure a remedy for breach of such an agreement. The chancellor, however, heard the merits of the case, since defendants answered to the merits. He found that plaintiff failed to sustain her burden of proof as to the existence of any such agreement. The finding is not against the manifest weight of the evidence and, accordingly, we cannot upset such a finding, wholly apart from the problems caused by the impropriety of establishing such a claim by amending a complaint for separate maintenance after the death of Lawrence. *Schmalzer v. Jamnik,* 407 Ill. 236 (and cases there cited); *City of Quincy v. Kemper,* 304 Ill. 303; *Nalty v. Federal Casualty Co.,* 245 Ill. App. 180.

Plaintiff further contends that withdrawal of the balance of the joint savings account was a fraud on her dower rights. Again, the inaptness of this suit to decide such a question is apparent. In *Pearsons v. Pearsons,* 282 Ill. App. 92, 108, this court sustained the husband-appellee's contention that the court below improperly awarded dower rights in a separate maintenance suit. The general rule was reiterated that the separate maintenance statute grants no power to settle property rights. Similarly, in *Petta v. Petta,* 321 Ill. App. 512, 521, this court, in reversing a decree awarding certain real estate to the wife, said that while such property rights could be settled "in an apt pro-

ceeding," omission from the separate maintenance statute of the power to settle such rights was "significant and persuasive." Moreover, the evidence in this case is inadequate to support the doctrine under which a court of equity protects a widow's rights. Nothing prohibits a husband from giving away during his lifetime all his personal property, even when such gifts purposely eliminate any property out of which dower could be obtained. A court of equity will only interfere when the husband has made "sham gifts" or "sham sales," designed to defeat his wife's dower rights. If the husband has made a complete and irrevocable transfer of the property, equity will not ordain such transfer as fraudulent, whatever its purpose. Kerr, in Fraud and Mistake, from which this doctrine stems, said, p. 220:

"There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be bona fide, and no right is reserved to him, though made to defeat the right of the wife, it will be good against her."

*Padfield v. Padfield,* 78 Ill. 16; *Delta & Pine Land Co. v. Benton,* 171 Ill. App. 635; *Haskell v. Art Institute of Chicago,* 304 Ill. App. 393. All the cases cited by plaintiff are so different with respect to their facts that we cannot consider them authority for plaintiff's position in this case. In the case at hand, nothing in the record indicates that if, in fact, the money in the joint savings account was Lawrence's, he did not effect a complete transfer of that money to Raymond. The most that can be said is that such a transfer violated the injunction, and as we have shown above, such a

165

violation does not form a basis for plaintiff's claim in this proceeding.

Plaintiff assigns as error various rulings of the chancellor on evidentiary points. Under our view of the case, such contentions, wholly apart from their lack of substance, are irrelevant.

*Judgment affirmed.*

TUOHY and ROBSON, JJ., concur.