ADELINE TOMAN, Plaintiff-Appellee, *v.* LIBBIE SVOBODA, Defendant-Appellant.

First District (2nd Division)   No. 58904

Opinion filed June 4, 1976.

Barclay, Damisch & Sinson, Ltd., of Chicago (John W. Damisch and Theodore W. Wrobleski, of counsel), for appellant.

Donald L. Johnson and Grill and Alfassa, both of Chicago, for appellee.

Mr. JUSTICE HAYES delivered the opinion of the court:

The instant action is a complaint by plaintiff, as the sole heir of all the personal property of her intestate deceased husband, to impose a constructive trust upon shares of stock, the legal title to which is in defendant as the surviving joint tenant of a joint tenancy created by the decedent between himself and defendant during decedent's marriage to plaintiff. After trial, a judgment was entered in favor of plaintiff, and defendant appeals.

The essential facts are as follows. Plaintiff, Adeline B. Toman, and decedent, Edward Toman, were married in December of 1946 and remained married until decedent's death in 1967. Prior to his marriage to plaintiff, decedent owned only an insignificant number of shares of stock. During the course of the marriage and from his earnings, he acquired 27 shares of common stock of American Telephone and Telegraph Company (AT&T), 68 shares of common stock of Great Falls Gas Company (Great Falls), and 185 shares of common stock of North Shore Gas Company (North Shore). These securities were held by decedent in his own name.

In July of 1956, decedent transferred the 27 shares of AT&T to Barbara Toman (his mother), defendant Libbie Svoboda (his sister), and himself as joint tenants with right of survivorship. In October of 1956, a new subscription for three shares of AT&T was registered to decedent and defendant in joint tenancy with right of survivorship. In August of 1956, the Great Falls stock was transferred on the corporate books to decedent, defendant, and their mother in joint tenancy with right of survivorship. In October of 1956, the North Shore stock was transferred on the corporate books to decedent, defendant, and their mother as joint tenants with right

of survivorship. Ultimately, the North Shore stock was exchanged for stock in Peoples Gas Company and, *by virtue of stock splits, grew to* number 262 shares in the latter company.

In 1957, decedent's mother died. The shares of stock mentioned above were then transferred on the respective corporate books to decedent and defendant as joint tenants with right of survivorship. Subsequently, decedent and defendant as joint tenants with right of survivorship came to hold an additional 14 shares of AT&T (11 shares by virtue of subscriptions and 3 shares by virtue of a bond conversion). Owing to stock splits in AT&T, decedent and defendant ultimately came to own 220 shares of common stock in AT&T as joint tenants with right of survivorship.

In 1967, decedent died intestate, survived by plaintiff and defendant as his only heirs. Apparently, at the time of his death, the only substantial assets owned by decedent were his interest, as a joint tenant with defendant, in the above-mentioned shares of stock (which shares then had a value of about $20,000) and his interest, as a joint tenant with plaintiff, in their marital home.

In her complaint, plaintiff alleges that decedent during his lifetime represented to her that the shares of stock were part of his estate and would pass to plaintiff by inheritance at his death; that, during decedent's lifetime, all dividends derived from the stock were received by decedent and used by him as his own property; and that decedent had transferred the stock into joint tenancy with his mother and sister, and later with his sister, for the sole purpose of defeating plaintiff's statutory marital right in the stock. Plaintiff therefore prayed for the imposition of a constructive trust upon all the shares of stock, legal title to which had passed to defendant by operation of law upon the death of decedent.[1]

After defendant had filed her answer, the cause came before the Honorable Charles R. Barrett on cross-motions for summary judgment. Judge Barrett, after a finding that there was no evidence of any fraud on plaintiff's statutory marital right, granted defendant's motion for summary judgment. On appeal, this court reversed and remanded (*Toman v. Svoboda* (1972), 4 Ill. App. 3d 148, 280 N.E.2d 499) for the reason that a genuine question of fact existed as to whether decedent's transfers of the shares of stock into joint tenancy with right of

---

[1] Plaintiff thereby took the position that her statutory right to inherit all the personal property of her intestate deceased spouse (under the relevant provisions of Ill. Rev. Stat. 1967, ch. 3, par. 11) was a statutory marital right comparable to the statutory marital right granted to the surviving renouncing spouse of a *testate* deceased spouse by the provisions of Ill. Rev. Stat. 1967, ch. 3, par. 16. This position was vindicated by the decision in *Montgomery v. Michaels* (1973), 54 Ill. 2d 532, 301 N.E.2d 465, referred to later in this opinion.

survivorship had been made with the intent to defraud plaintiff of her statutory marital right.

At the trial on remand, a great deal of testimony was adduced by plaintiff relative to the secretive manner in which decedent had effected the transfer of the shares into joint tenancy with his mother and sister, and later with his sister. Defendant, on her part, introduced evidence intended to prove that she had contributed some consideration for the transfer, but the trial court found that she was a mere donee. In entering judgment for plaintiff, the trial court found that the transfers constituted "a fraud in law" on plaintiff's statutory marital right because the transfers had been made by the decedent with the intent thereby to defeat the plaintiff's statutory marital right.

At issue on this appeal is whether plaintiff's statutory marital right in the shares of stock was effectively defeated by decedent's transfer, during his lifetime, of the stock to himself and defendant in joint tenancy with right of survivorship.

OPINION

The statutory marital right which plaintiff, as the surviving spouse of the intestate decedent-donor, asserts against the defendant-sister of the deceased, as the surviving joint tenant of the property in question, is created by section 11 of the Probate Act (Ill. Rev. Stat. 1967, ch. 3, par. 11). Under the circumstances existing in the instant case (namely, plaintiff and defendant were the sole surviving heirs of the intestate deceased spouse), plaintiff's statutory marital right extends to the whole of decedent's personal property. The comparable statutory marital right, where the deceased donor-spouse dies *testate* and where the surviving spouse renounces the will in the manner prescribed by section 17 of the Probate Act (Ill. Rev. Stat. 1967, ch. 3, par. 17) is created by section 16 of the Probate Act (Ill. Rev. Stat. 1967, ch. 3, par. 16). In *Montgomery v. Michaels* (1973), 54 Ill. 2d 532, 301 N.E.2d 465, the court held that the statutory marital right created by par. 11 in the surviving spouse as an heir of the intestate deceased spouse was entitled to the same degree of protection as has been afforded, as a matter of public policy, to the statutory marital right created by section 16.

It is elementary law that the statutory marital right referred to is the right of a surviving spouse to a fee interest in the whole or a specified fraction of all the property which the deceased spouse owned in fee at the date of his or her death, after payment of all established claims of estate creditors and of the costs of administration of the decedent's estate.

Unlike the common law dower right (now abolished in Illinois; Ill. Rev. Stat. 1973, ch. 3, par. 18) which, under given circumstances, attached to

all *real* property owned in fee by the deceased spouse at any time during the continuation of a valid marriage and which, during the lifetime of both spouses, constituted the marital right of inchoate dower, the statutory marital right has no inchoate stage, since it applies only to property which the deceased spouse owns in fee at the date of his or her death. (*Petta v. Host* (1953), 1 Ill. 2d 293, 115 N.E.2d 881.) Prior to that date of death, the statutory marital right is a pure expectancy which, however, cannot be defeated unilaterally by any *testamentary* transfer of the deceased spouse. Hence, the statutory marital right does not enjoy the same protection as was afforded to the common law inchoate dower, namely, that, once the inchoate dower attached, it could not thereafter be defeated by any *unilateral* inter vivos act of the owner spouse.

It follows that, with the exception of certain so-called "illusory" inter vivos transfers of his or her own property by the now deceased spouse (to which exception we shall advert later in this opinion), the owner and now deceased spouse may completely defeat the statutory marital right of the surviving spouse simply by arranging not to be the owner of any property at the date of his or her death by reason of having made *real* (as opposed to sham or merely colorable) inter vivos donative transfers of all of his or her own property to persons other than the surviving spouse. Nor does the statutory marital right (unlike certain *contractual* rights of a surviving spouse) impose any duty on the owner spouse to deal with his or her property during the lifetime of both spouses in what might be regarded as a normal or reasonable course of dealing with one's own property, either as to all or as to a disproportionate share of that property. (It is assumed, of course, that the owner spouse has the requisite mental capacity and is not acting under any legal constraint.) This principle is sometimes expressed by saying that, insofar as the statutory marital right is concerned, the owner and now deceased spouse, in the lifetime of both spouses, has the absolute right actually and really to dispose of his or her own property in any manner he or she sees fit without the concurrence or even the knowledge of the now surviving spouse. And, moreover, he or she may do so even though he or she does so for the precise purpose of thereby minimizing or completely defeating the interest which the now surviving spouse would otherwise have obtained by reason of the statutory marital right. *Haskell v. Art Institute of Chicago* (1940), 304 Ill. App. 393, 26 N.E.2d 736; *Milewski v. Milewski* (1953), 351 Ill. App. 158, 114 N.E.2d 419. See also *Hoeffner v. Hoeffner* (1945), 389 Ill. 253, 59 N.E.2d 684.

The effective method by which to minimize or defeat the statutory marital right is by making a *real* inter vivos *gift* to another (with the one exception to which we shall advert later in this opinion); any transfer

other than by way of gift would simply leave the statutory marital right applicable to the consideration received therefor if still owned by the now deceased spouse at the date of his or her death. Under Illinois law, which is in accord with the weight of American authority, a *real* inter vivos gift to another *is* thus effective, even though the said real inter vivos gift is made for the precise purpose of minimizing or defeating what would otherwise have been the statutory marital right of the donor's surviving spouse in the subject matter of the gift (or, in other words, with that precise intent). *Haskell v. Art Institute; Milewski v. Milewski;* Annot., 49 A.L.R. 2d 521, 546 (1956). Under the minority view ("espoused" by Missouri), such purpose or intent invalidates the *real* inter vivos gift (at least to the extent necessary to afford the surviving spouse his or her statutory marital right in the subject matter thereof), because the gift is then legally deemed to be in fraud of the statutory marital right. The minority States examine the inter vivos gift looking for so-called fraudulent circumstances, by which they mean circumstances indicating that the gift, though real, was made with the intent to minimize or defeat the statutory marital right. The confusing factor is that Illinois and the majority of American States also examine the gift looking for what they unfortunately also call fraudulent circumstances, but by which they mean circumstances indicating that the gift was not a *real* gift because there was no present donative intent (that is, no donative intent of any kind or, at most, a mere testamentary, as distinguished from a present, donative intent), for lack of which the alleged gift was simply a sham or a merely colorable transfer of legal title.

For example, in *Montgomery v. Michaels*, the court recited some attendant circumstances bearing upon the intent of the decedent donor-spouse in making the inter vivos donative transfer of legal title: the secretive manner in which the donor acted as to the now surviving spouse; what the donor-spouse might have said to others as to his or her intent in making the apparent gift; the proximity in time between the donative transfer and the donor's death; the value of the donor's estate and the value of property otherwise left by him or her to the surviving spouse; "and, generally, all factors might be indicative of an intent to defraud the surviving spouse of his or her statutory share." All these circumstances are relevant to the existence of an intent to defraud the surviving spouse of his or her statutory marital right *by making a sham or merely colorable inter vivos donative transfer*, which *is* a sham or merely colorable because it lacks the essential element of a present donative intent; either there is no donative intent of any kind, or there is at most a mere *testamentary* donative intent. The fraud (which the trial court in the instant case referred to as "fraud in law") relates to the absence of a present donative

intent, not to the presence of an intent or purpose to minimize or defeat the statutory marital right of the now surviving spouse. The very next sentence in the *Montgomery* opinion is as follows:

"* * * our courts have recognized that one may dispose of his property during his lifetime and thus deprive a spouse of his, or her, statutory share, so long as the disposition was sufficiently effective and complete, unless the transaction is illusory or tantamount to fraud. *Holmes v. Mims* (1953), 1 Ill. 2d 274, 279; *Padfield v. Padfield* (1875), 78 Ill. 16, 18, 19."[2] 54 Ill. 2d 532, 535.

The case of *Rose v. St. Louis Union Trust Co.* (1969), 43 Ill. 2d 312, 253 N.E.2d 417, which has been cited to us by plaintiff and which is also cited in *Montgomery*, is a case in which our Supreme Court, after resolving a conflict of laws issue, decided that Missouri law as to what intent constituted a fraud on the statutory marital right of a surviving spouse was applicable because the inter vivos transfer involved was a trust transfer governed by Missouri law. Hence, not only is the case not indicative of what Illinois law is on the relevant issue in the instant case, but it is really an eloquent witness to the fact that Illinois law is different from Missouri law as to the said issue.

We have one further observation by way of background. There is no reason why, should he wish to do so, a donor may not make a *present* donative transfer solely of the *future* fee interest in the subject matter involved. The donor thereby simply reserves for himself the present life estate in the *whole* subject matter of the gift. (See *In re Estate of Pokorney* (1968), 93 Ill. App. 2d 174, 177, 236 N.E.2d 396.) And, at least in gifts of personal property, the said reservation of the life estate, in order to be effective as between the parties, need not appear in the form of the gift itself, but need merely be expressed to, and understood by, the donee. But, where the donor does reserve to himself the life estate in the whole subject matter of the gift, the existence of his *present* intent to give now the *future* fee interest in the subject matter of the gift must be subjected to special scrutiny to make sure that his donative intent *is* present and not merely testamentary. The factors enumerated in *Montgomery* are of relevance to such scrutiny. As we read the opinion of this court in the first appeal in the instant case, the material issue of fact referred to was this very issue of present donative intent, owing to the decedent-donor's retention during his lifetime of *all* dividends and voting rights despite the fact that the shares of stock were carried on the respective corporate books as having been issued to the decedent-donor and defendant as joint tenants with right of survivorship.

In the instant case, the inter vivos transfers which defendant-donee

---

[2] We construe the "unless" clause to refer to the single exception to which we have adverted above and which we shall deal with later in this opinion.

contends were real consisted of transfers of certain corporate shares made by the donor deceased spouse (who was then and during the lifetime of both spouses the sole owner of the said shares) to himself, his mother, and his sister-defendant as joint tenants with right of survivorship. Thereafter, the mother predeceased her children, whereupon the shares were re-registered on the corporate books as having been issued to the donor-spouse and his sister-defendant as joint tenants with right of survivorship. All the said transfers were made on the books of the corporation issuing the shares in question. The address given to the issuing corporation by the donor-spouse as the address for the joint tenants was the address of his sister; hence, notices of corporate shareholder meetings and of voting rights and proxy designations therefore and all dividend checks were mailed to that address. Since the donor-spouse did not inform plaintiff of the said transfers into joint tenancy and since no relevant mail was sent to the marital address, plaintiff had no knowledge of such transfers during the lifetime of the spouses.

Furthermore, during the lifetime of the donor-spouse, he retained, as between the joint tenants, the sole right to all dividends and other shareholder rights evidenced by the share certificates. Plaintiff contends that he thereby retained complete control of all the shares during his lifetime so that his conduct evidences that he had no *present* donative intent (as distinguished from a mere testamentary donative intent) at the time he transferred the shares into joint tenancy, for which reason the transfer was a sham and merely colorable; or, in the alternative, even if he did then have the requisite present donative intent, his retention of the said complete control during his lifetime served to make the real donative transfer "illusory" and equivalent to a mere testamentary transfer insofar as plaintiff's statutory marital right is concerned, for which reason the present donative transfer, though real, was ineffective to defeat plaintiff's statutory marital right.

As to plaintiff's first contention, we agree that such retention is highly relevant on the issue of the existence of a *present* donative intent. But such evidence is far from controlling on that issue, because it is at least equally compatible with the retention by the donor-spouse of a present life estate in the shares, so that the precise subject matter of the gift which the donor-spouse presently intended to give was, not the full present fee interest in the shares, but rather the vested *future* fee interest *only*.

The validity of transfers of *personal* property into joint tenancy with right of survivorship in Illinois is controlled by section 2 of "An Act * * * in relation to joint rights and obligations" (Ill. Rev. Stat., ch. 76, par. 2), as of the date the transfer into joint tenancy is made. Where the subject matter of the gift consists of shares of stock, the applicable subparagraph is subparagraph (b). As section 2 and subparagraph (b) have been

construed by the Illinois cases, the issuance by the corporation, pursuant to the direction of the sole owner accompanied by the surrender of his share certificate, to the donor and another in joint tenancy with right of survivorship constitutes compliance with the essential element of delivery of the gift. Moreover, the said transfer creates a presumption of the existence of a present donative intent on the part of the donor-joint tenant, which presumption can be overcome only by clear and convincing evidence to the contrary. (*In re Estate of Pokorney; Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850.) In effect, only evidence that the transfer was made for the mere convenience of the donor-joint tenant will constitute clear and convincing evidence to the contrary. The relevant Illinois cases are collected in the recent opinion of this court in *In re Estate of Elliott* (1975), 33 Ill. App. 3d 1046, 339 N.E.2d 378.

The presumption as to the existence of a present donative intent is not rebutted by evidence that, as between the joint tenants, the donor-joint tenant retained a life estate in all the shares of stock, because such evidence merely establishes that the precise subject matter of the gift was the *future* fee interest *only* in the shares of stock. There is no evidence in the instant case that the transfers were made solely for reasons of mere convenience to the donor-joint tenant. We conclude, therefore, that the presumption of the existence of a present donative intent was not rebutted by the evidence of the retention by the donor-joint tenant during his lifetime of all dividends and other shareholder rights. (*In re Estate of Pokorney.*) It follows that the transfers of the joint tenancy were real and not mere sham or colorable transfers. We have already held herein that evidence that a *real* inter vivos gift of his own property, made to a third party by a donor-spouse during the lifetime of both spouses, was so made with the intent thereby to defeat what would otherwise have been the statutory marital right the of now surviving spouse does not, under Illinois law, constitute any "fraud in law" on the said statutory marital right of the said surviving spouse so as to vitiate the inter vivos gift to the extent of the said statutory marital right. We conclude, therefore, that the instant inter vivos gifts to defendant of the future fee interest in the shares were real and did not constitute any fraud in law on the statutory marital right of plaintiff, even though made with the intent thereby to defeat what would otherwise have been the plaintiff's statutory marital right in the said shares of stock.

There remains for consideration plaintiff's second contention that these gifts made to defendant by way of transfers into joint tenancy with right of survivorship, though real and not in fraud of plaintiff's statutory marital right, are yet, owing to an exception, ineffective to defeat plaintiff's statutory marital right. The exception relates to certain outright inter vivos donative transfers of legal title under the applicable law of property

or of equitable title under the applicable law of trusts, and to the creation of contract rights in certain donee beneficiaries under the applicable law of contracts, all of which inter vivos donative transactions, though real under the respective applicable law so as to vest presently existing property rights in the donee, nevertheless create in the said donee mere defeasibly vested rights which are defeasible at the will of the donor during the donor's lifetime. Owing to the retention by the donor during his or her lifetime of such complete control over the presently existing rights of the donee, for purposes of protecting the statutory marital right of the surviving spouse of the donor, the said inter vivos donative transactions are regarded as quasi-testamentary and therefore voidable to the extent required to protect the said statutory marital right. And this is true whether or not the said real transactions of the donor had been carried out with the intent thereby to minimize or defeat the said statutory marital right.

The usual form of complete control by the donor-spouse is his or her retention for life of the power to revoke the transaction and thereby defeat the presently existing rights of the donor. In the case, however, of transfers of equitable title to a donee by means of an inter vivos revocable trust, some *further* retention of control by the donor-settlor is required, namely, the retention of some substantial power over the trust res which would normally be vested in the trustee, as, for example, the power to invest and reinvest the trust funds. For convenience, such a trust may be termed a revocable and controllable inter vivos trust (as to which, see *Smith v. Northern Trust Co.* (1944), 322 Ill. App. 168, 54 N.E.2d 75); the Totten trust simply is the most extreme form of such a trust (as to which, see *Montgomery v. Michaels*; see also *In re Estate of Elliott*).

Under the law of property, the only valid gift which legally involves the retention by the donor of the power to revoke, is the gift *causa mortis*; an essential element of a valid gift inter vivos is irrevocability. It follows that only a gift *causa mortis* is, for purposes of the statutory marital right of the surviving spouse of the donor, regarded as a quasi-testamentary transfer. (See dictum in *Delta & Pine Land Co. v. Benton* (1912), 171 Ill. App. 635, and in *Smith v. Northern Trust Co.* See also *West v. Miller* (7th Cir. 1935), 78 F.2d 479, *cert. denied*, 296 U.S. 633.) In the instant case, the gifts were not and could not have been *causa mortis*. They were gifts inter vivos made to the donee by the transfer of the donor's title into a joint tenancy between the donor and donee. As such, the interest of the donee in both the whole *and* an undivided equal part was subject to defeasance only by the death of the donee leaving the donor surviving.

Does this type of defeasibility involve such a retention of complete control by the donor-joint tenant over the presently existing interest of the donee-joint tenant as to make the transfer of interest from donor to donor

and donee in joint tenancy quasi-testamentary for purposes of the statutory marital right of the surviving spouse of the donor-joint tenant. The answer is self-evident; it is not. The donor-joint tenant has no control whatever over the sequence of deaths.[3] It follows that a real transfer of title from the donor-spouse to himself or herself and the donee in joint tenancy is not quasi-testamentary and does not fall within the single exception with which we are dealing.[4]

■■ To summarize our holding: the general rule is that a spouse may dispose of his or her own property during his or her lifetime by gift to another and thereby deprive the other spouse (who then proves to be the surviving spouse) of what would otherwise have been his or her statutory marital right in the subject matter of the gift. But the said gift must be real, and not a sham or merely colorable and therefore fraudulent transfer of title; there must be a legally effective delivery made with a present donative intent. The donor-spouse may reserve a life estate in the property given, in which event the precise subject matter of the gift is the future fee interest in the said property; but, where the donor-spouse does so, his or her present donative intent is subject to special scrutiny to assure that it was not a mere testamentary donative intent.

■■ If the gift by the donor-spouse is real, the existence of a co-intent on his or her part thereby to deprive the other spouse (who then proves to be the surviving spouse) of what would otherwise have been his or her statutory marital right in the property given is irrelevant, and is not a fraud in law on the said statutory marital right.

There is, however, one type of *real* gift which will *not* deprive the surviving spouse of his or her statutory marital right. That type of real gift is one in which the donor-spouse, under the law applicable to the method of gift used, lawfully retains such a degree of control over the donee's interest in the property that, for purposes of the statutory marital right of the surviving spouse, the transfer of title to the donee must be regarded as quasi-testamentary, and the transfer is voidable to the extent required to protect the said statutory marital right.

In the instant case, the gift of the future fee interest in the shares of stock by means of the transfer of title on the corporate books from the

---

[3] It is true that the donor retains the power to sever the joint tenancy by partition during the lifetime of both joint tenants, and thereby to defeat the donee-joint tenant's right in the whole. But the donor retains no control whatever over the donee-joint tenant's right to an undivided equal part.

[4] We are aware that the Uniform Probate Code, section 2—202(1) (i) and (iii), each constitutes a recommended proposal that the exception should be expanded to include the precise form of inter vivos donative transfer involved in the instant case. We are also aware, however, that the Illinois General Assembly, in enacting the new Probate Act of 1975 (effective 1 January 1976), did not see fit to include the said section 2—202 in the Probate Act of 1975.

decedent donor-spouse to himself and defendant as joint tenants with right of survivorship, all in compliance with the requirements of section 2(b) of "An Act * * * in relation to joint rights and obligations" (Ill. Rev. Stat. 1967, ch. 76, par. 2(b)) constituted an effective delivery of the shares of stock and created a presumption that the said delivery was made with present donative intent, which presumption was not rebutted by clear and convincing evidence to the contrary. Hence, the gift was real. Even assuming the existence of a co-intent, on the part of the decedent donor-spouse, thereby to deprive the plaintiff of what would otherwise have been her statutory marital right in the said shares, such co-intent does not constitute a fraud in law on her said statutory marital right. Finally, since the method of gift used was the transfer of title from the donor-spouse to himself and defendant as joint tenants with right of survivorship, with the donor-spouse reserving a life estate in the shares of stock, there was no retention by the donor-spouse of such control over the interest of the donee in the shares of stock as would require the inter vivos transfer to be regarded, for purposes of the statutory marital right of plaintiff, as quasi-testamentary and therefore voidable to the extent required to protect the said statutory marital right.

In view of our holding it is unnecessary for us to decide the other issues raised by defendant in this appeal.

For the reasons set out above, the judgment of the circuit court of Cook County is hereby reversed and the cause is remanded to the trial court with direction to enter judgment for defendant-appellant.

Reversed and remanded with direction.

STAMOS, P. J., and DOWNING, J., concur.