JOHN F. HAVEY, Ex'r of the Will of Paul Havey, Deceased, Plaintiff-Appellant, v. FRANCES B. PATTON, Indiv. and as Ex'r of the Will of Myra Havey, Deceased, Defendant-Appellee.—(NANCY LEAH DRENNAN, Defendant.)

Fourth District   No. 13753

Opinion filed September 30, 1977.—Rehearing denied November 7, 1977.

GREEN, P. J., concurring in part and dissenting in part.

Edward F. Casey, of Casey & Casey, of Springfield, for appellant.

Anthony J. Manuele, of Springfield, for appellee.

Mr. JUSTICE HUNT delivered the opinion of the court:

This is an action brought by the executor of the will of Paul Havey, deceased, to recover the deceased's statutory share upon Paul Havey's renunciation of the will of Myra Havey, his deceased spouse. The executor also seeks to have certain joint tenancy accounts and certain real estate be declared a portion of Myra Havey's estate.

The facts are substantially undisputed. Paul and Myra were married more than 35 years prior to her death by cancer on November 8, 1972. They had no offspring and had marital difficulties. The couple had been living separate and apart for some time prior to the wife's death. Myra Havey had inherited some $40,000 from her family, which she kept in accounts in her own name. Paul and Myra had also received a home purchased by her parents which they later sold and used the proceeds in part payment of another home which they held in joint tenancy. Paul was employed by the State of Illinois and worked regularly up to the time of his death. Myra's expenses with her lengthy illness were paid in large part by Paul's insurance coverage in his employment. The record is silent as to any other support for Myra during the period of separation or as to any other assets which Paul owned.

In March and July 1972, Mrs. Havey converted a checking account at the First State Bank of Springfield, Illinois, to add Frances B. Patton, her sister-in-law and defendant herein, as a person having power of attorney to write checks. In July 1972, she converted a savings account at the bank to a joint account with defendant. She also opened a joint savings account at the Workingmen's Savings and Loan Association of Springfield and purchased a jointly held certificate of deposit at the Sangamon Home Savings Association with defendant as co-owner with right of survivorship. Also, in July, she executed a quitclaim deed to the defendant conveying a remainder interest in the family home while reserving a life estate in herself. The deed was recorded and returned to the grantor's attorney's office, but was never physically delivered to the defendant. Myra then executed her will in July 1972, naming the defendant as executor, ordering her estate to be liquidated and the proceeds after the payment of debts and costs to be divided between her surviving spouse and the defendant. The fourth paragraph of her will stated as follows:

> "I have set up certain accounts in joint tenancy with the right of survivorship which are to pass by operation of law and are not to be made a part of my estate."

The inventoried probate estate consisted of the checking account which carried a balance of less than $4,000 plus household goods. This was not enough to pay the costs of last illness, funeral, other debts, and costs of administration. However, the joint account and certificate of deposit held with defendant totaled $47,509.77. The house was sold after Myra's death but the record is silent as to the amount received.

Paul Havey, during his lifetime and within the period prescribed by the Probate Act, filed a written renunciation of the will. After his death, his executor filed this action for declaratory judgment claiming the above described transfers were a sham and a fraud in violation of the marital

rights of Paul Havey. The trial court, however, found the deed effective as conveying a remainder interest and reserving a life estate, that no delivery of the deed was necessary, and that no violation of the marital rights occurred. The court also found from the language in the joint tenancy contracts and the evidence that Myra had made an effective inter vivos gift to defendant. Judgment was granted for the defendant.

Turning first to the joint accounts, the signature card contracts contained, in addition to the usual language, the following:

> "[F]unds placed in or added to the account by any one of the parties *are and shall be conclusively intended to be a gift and delivery* * * * to the * * * other party * * * to the account to the extent of * * * their pro rata interest * * *."

Defendant's testimony showed she never contributed any of the funds, that she was not to have the right to withdraw any funds during the lifetime of Myra except to pay Myra's bills, that Myra was aware she was terminally ill at the time of the transfers, that defendant was to receive all of the funds at Myra's death as surviving joint tenant, that it was Myra's intent that her husband should not receive any portion thereof, and that he was an alcoholic, employed and able to sustain himself.

■■ A valid gift inter vivos must be made with intent to vest a present interest. Retaining the right to withdraw the funds, or the possession of the passbook or share certificate, does not overcome such intent. (*Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850.) The marital right of the surviving spouse to a portion of the decedent's estate (Ill. Rev. Stat. 1971, ch. 3, par. 16) may be defeated by a valid inter vivos gift even though the stated intent of the donor is to deprive the spouse of a right to share in the transferred fund. (*Haskell v. Art Institute of Chicago* (1940), 304 Ill. App. 393, 26 N.E.2d 736; see *Milewski v. Milewski* (1953), 351 Ill. App. 158, 114 N.E.2d 419.) If there is no present donative intent or a mere testamentary intent, then the attempted gift is simply a sham or a colorable transfer of legal title which will be set aside for the benefit of the surviving spouse. (*Toman v. Svoboda* (1976), 39 Ill. App. 3d 394, 349 N.E.2d 668.) The fraud arises not out of the intent to minimize or defeat the marital right of the surviving spouse, but from the absence of a donative intent.

■■ Joint tenancies in bank and savings and loan accounts are controlled as provided in "An Act to revise the law in relation to joint rights and obligations" (Ill. Rev. Stat. 1971, ch. 76, pars. 2, 2(a)). It provides for creation of joint tenancies by will or by written agreement. The written agreements here obviously created joint tenancies which were referred to and ratified by the will.

■■ Present donative intent may be negated by clear and convincing evidence. (See *Montgomery v. Michaels* (1973), 54 Ill. 2d 532, 301 N.E.2d

465.) In the present case, Mrs. Havey was aware of the malignancy. She needed only enough money to sustain herself in her terminal illness which turned out to be a period of about four months. She wanted her sister-in-law to have whatever property she, Mrs. Havey, had brought into the marriage but had kept in her own name. She did not want her husband to have any part of it. She attempted to accomplish this goal by giving the defendant the funds through the creation of joint accounts. The joint tenancy contract acknowledged that there was a present gift. While it is conceded that she did not wish her spouse to have any part of these funds, this in itself does not defeat the present gift. The trial court found from the terms of the agreement and the evidence that there was sufficient donative intent to sustain the gift inherent in the joint account. The evidence presented by the plaintiff did not establish a sham or mere testamentary intent. We agree with the holding of the trial court. We adopt the holding of *Toman.*

■■ Concerning the real estate, Myra executed a quitclaim deed to her undivided one-half interest in the family home, reserving to herself a life estate with remainder to her sister-in-law, the defendant herein. The deed was recorded but not delivered to the defendant. Plaintiff argues that the lack of delivery was fatal to a severance of the joint tenancy or vesting of title in defendant. He cites as his sole authority *Klajbor v. Klajbor* (1950), 406 Ill. 513, 94 N.E.2d 502. *Klajbor* is factually distinguishable. There the grantor had placed the property in joint tenancy with himself and his second wife by deeding the property to a nominal grantee and receiving title back in joint tenancy. Later, in the face of marital problems, he executed a quitclaim deed to his undivided one-half interest to his son by a previous marriage, but never delivered the deed. The son testified later that his father had told him of the deed and that it was to take effect at grantor's death. The court held that this did not break the joint tenancy. Here, the deed reserved a life estate with remainder to the grantee; when the deed was returned to the attorney's office, delivery was complete even though the deed was not to take effect until the death of the grantor. *Johnson v. Fleming* ((1921), 301 Ill. 139, 133 N.E. 667; see also *Marshall v. Moon* (1924), 311 Ill. 605, 143 N.E. 399.

The decree of the trial court is affirmed.

Affirmed.

REARDON, J., concurs.

Mr. PRESIDING JUSTICE GREEN, concurring in part and dissenting in part:

I agree with the determination of the majority that the portion of the

judgment finding the remainder interest in the real estate to be in the defendant should be affirmed. I would reverse the portion of the judgment which finds her to also be entitled to the funds in the joint tenancy bank account.

I do not dispute that the decedent's retention of the right to withdraw the funds from the account did not, of itself, negate an inter vivos donative intent on her part to make a gift to defendant. Her agreement with defendant, however, was that defendant had no right to withdraw funds from the account during decedent's life. In *Montgomery v. Michaels* (1973), 54 Ill. 2d 532, 301 N.E.2d 465, the Supreme Court ruled as a matter of law that the creation of a "Totten Trust" by one spouse did not create a sufficient inter vivos transfer of funds to defeat the same statutory rights of a surviving spouse as are involved here. That court stated:

> "In the case at bar the settlor was also the trustee. During her lifetime she retained absolute, unqualified control over the bank accounts, and possessed and exercised all incidents of complete ownership, including the right to receive interest payable thereon and withdraw the principal thereof. The enjoyment of the proceeds of the accounts by the beneficiary or beneficiaries named therein would arise only upon the death of the settlor-trustee with the accounts remaining intact." 54 Ill. 2d 532, 536, 301 N.E.2d 465, 467.

Here we are concerned with a joint tenancy bank account rather than a trust account. I am aware of the statement in *Toman v. Svoboda* and other appellate opinions that say that the *Montgomery v. Michaels* doctrine has no application to joint tenancy accounts. Neither this court nor the supreme court has so stated, however, and no case has been called to my attention from any of the appellate districts ruling upon the unusual situation of this case where the decedent had not only the ability to withdraw all funds prior to her death but also *the sole beneficial use of the funds during her lifetime.* Under these circumstances, as in *Montgomery,* the defendant's "enjoyment of the proceeds" arose "only upon the death" of the decedent "with the accounts remaining intact." I can see no logical reason why the inter vivos donative intention of the decedent is not negated in this case just as it was in *Montgomery.*

I would affirm the portion of the judgment finding the real estate to be in defendant but would reverse the portion of the judgment finding her to be also entitled to the proceeds of the joint tenancy bank account and remand the case ordering that the judgment be modified to find the bank account to be an asset of the estate.